No. 44,407

THE STATE OF KANSAS, *Appellee, v.* HERMAN L. ADAMSON, *Appellant.*

(419 P. 2d 860)

Opinion filed November 5, 1966.

*Kenneth L. Ingham,* of Wichita, argued the cause and was on the brief for the appellant.

*R. K. Hollingsworth,* Deputy County Attorney, of Wichita, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Herman L. Adamson, has appealed from a conviction of second-degree burglary and grand larceny.

In summary, the state's evidence showed that about 1.30 a. m.,

January 23, 1965, a Wichita police officer, Herman R. Floyd, noticed a car parked on Emporia Street and saw that a glass was broken in the door of Dyer's Trading Post nearby. At approximately the same time, Floyd observed the defendant walking along the side of the building toward the parked car and get in under the wheel. When he walked up to the car to have a talk with the defendant, Floyd noticed two portable TV sets in the back seat. As the officer attempted to question the defendant, the latter started his car and drove off at high speed, turning off his lights after going two or three blocks.

Giving chase, Officer Floyd radioed for assistance. He soon lost sight of the speeding car, but it was promptly picked up by other officers who followed it at excessive speeds until it was finally wrecked in a collision with another car. At this point two men jumped out and ran between some houses. Police officers pursued the fleeing men and the defendant was soon apprehended, after a warning shot had been fired, and was returned to the scene of the wreck. Here he was identified by Officer Floyd as the man who had driven away from him on Emporia Street and was identified by a second officer as the man he had seen jump out of the driver's seat of the car after the accident. The wrecked car was found to contain seven television sets taken from Dyer's Trading Post.

The defendant's complaints are threefold: (1) That he was denied a continuance; (2) that prejudicial evidence was admitted which denied him a fair trial; and (3) that his sentence as an habitual criminal was excessive. These complaints will be considered in order.

Upon his arrest the defendant was provided with assigned counsel, Donald B. Clark, who represented Adamson at his preliminary examination and at all times subsequent thereto until May 10, 1965, at which time Mr. Clark was permitted to withdraw because Adamson had retained Benjamin H. Brown to represent him. Clark's withdrawal was ten days prior to the time the case was set for trial.

On May 18, 1965, the case was called for jury trial. At this time defense counsel orally moved for a continuance to the next term of court, stating he had just that morning talked with a material witness who would testify that on the day and time in question the defendant was with her at a club in a colored neighborhood. Counsel further stated he had not had sufficient time to give notice

[of alibi].  After some colloquy between the court and counsel for both sides, the motion for continuance was overruled.

The rule is well established in this jurisdiction that the matter of a continuance in a criminal case lies largely within the sound discretion of the trial court, whose ruling will not be disturbed unless there has been an abuse of discretion which has prejudiced the defendant's substantial rights (*State v. Hickock & Smith,* 188 Kan. 473, 482, 363 P. 2d 541, and cases cited therein.)

In our considered opinion, no abuse of discretion has been made to appear in this case.  The witness, a lady by the name of Wanda Brown, was present in the courtroom with defendant's common-law wife, Mae Marsh, throughout most of the day on May 18, 1965. The following morning Wanda reappeared and was called by the defendant to testify in his behalf.  That Wanda repudiated, from the stand, the story she had previously told defense counsel does not negative the fact that she was available for further questioning by defense counsel during court recesses on May 18 and during all of that evening.  And, since the state did not object to Wanda being questioned as an alibi witness, the defendant's prior failure to give notice was in nowise prejudicial.

This brings us to the defendant's second complaint—the admission of prejudicial testimony.  Wanda Brown testified on direct examination that she did not know the defendant and did not see him at the Starlight Club on January 23, 1965, but that Mae Marsh, the defendant's common-law wife, had paid her to testify otherwise.  Thereupon, the state cross-examined Wanda who related that Mae and a fellow named Gene offered her $50 to testify that she was with defendant at the Satelite (or Starlight) Club on the night in question; that Mae paid her $25 at the time she agreed to tell such a story and paid her the balance after court had adjourned on May 18; that on the first morning of the trial, while on their way to court, Mae and Gene stopped with her at a restaurant for coffee where they rehearsed the story with her and then took her by the jail where they yelled her name to the defendant through a second-story window, after which they all proceeded into a conference room with Mr. Brown.

The defendant maintains that the conversations which were had between Mae, Gene and Wanda were hearsay as to him and, thus, were inadmissible.

There might be merit to this contention were it not for two matters appearing of record:  First, no objection was made to Wanda's

testimony when it was given, except as to one answer discussed later; and second, the evidence leads to the inescapable conclusion that the defendant himself participated in the plot to introduce perjured testimony.

Going to the first point, we are once again constrained to point out that Kansas is firmly committed to the contemporaneous object-tion rule. K. S. A. 60-404, which was enacted in 1963, provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

This statutory provision is but a restatement of our long existing rule which requires that objection be made to the introduction of evidence before its admission is subject to review by this court. (*State v. Netherton*, 133 Kan. 685, 690, 3 P. 2d 495; *State v. Freeman*, 195 Kan. 561, 564, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981; *State v. Jolly*, 196 Kan. 56, 58, 410 P. 2d 267; *State v. Donahue*, 197 Kan. 317, 320, 416 P. 2d 287.)

Furthermore, the evidence clearly shows the defendant's complicity in a plan to use Wanda's false testimony. He testified he had known Wanda Brown a few months and had seen her on the evening of January 23 at the Starlight (or Satelite) Club, which he had left quite some time after 1:00 o'clock. On cross-examination, the defendant identified Wanda Brown as being the young lady who had been sitting in the courtroom that day with Mae Marsh, his common-law inamorata.

Again, at the argument on his motion for new trial, the defendant was sworn and testified:

"A. Well, the only one—all I know is the woman's name was Lawanda and I thought this witness was Lawanda, and all they hollered up at me in that window was that they had found my witness, Lawanda, and I took it was the right woman.

"Q. And it proved out to be the wrong Wanda?

"A. It certainly did."

In our judgment, Wanda's evidence, buttressed as it is by the testimony of the defendant himself, removes any reasonable doubt as to his knowledge of and collaboration in the illicit undertaking to secure perjured testimony. The defendant's after-trial claim that the witness he wanted was Lawanda, not Wanda, comes far too belatedly and is entirely unpersuasive.

Being a participant in a devious plot to introduce false testimony

at his trail, the defendant is in no position to complain of statements made by Mae Marsh in pursuance of that plan. K. S. A. 60-460 (*i*), which deals with hearsay evidence, makes the statement of a declarant admissible against a party when—

". . . (2) the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination . . ."

This statutory rule of evidence is merely the application of the law concerning statements made by fellow conspirators which this court has long followed. (*State v. Borserine*, 184 Kan. 405, 337 P. 2d 697; *State v. Shaw*, 195 Kan. 677, 408 P. 2d 650.)

During Wanda's cross-examination, the following questions and answers were asked and given:

"Q. Did she [Mae] tell you that you should tell the jury that you had known him [defendant] not longer than from July?

"A. Yes.

"Q. Did she tell you why?

"A. Because he had been in the penitentiary out in California.

"Q. Before that?

"A. Yes."

A defense objection to this testimony was overruled by the trial court. Even though the evidence, in effect, disclosed a prior conviction, we are inclined to believe that its admission was not erroneous under the surrounding circumstances. The defendant had testified he had known Wanda only a few months, and the challenged evidence tends to explain the reason for this particular fabrication on his part. It is part and parcel of the whole nefarious scheme to suborn perjury. We conclude that defendant's second point—the erroneous admission of prejudicial evidence—cannot be sustained.

We turn to the defendant's final complaint. Before sentence was pronounced, the state introduced evidence of two prior convictions, and the defendant wound up with two consecutive sentences of 25 years each. He now contends that, in imposing the two sentences, the trial court erred in admitting the record of a previous Oklahoma felony conviction.

This objection is premised on the failure of the Oklahoma journal entry to disclose whether the defendant was represented by counsel at the time he was sentenced on his plea of guilty. This contention lacks merit. The defendant is not entitled, in this proceeding, to mount a collateral attack upon the validity of the Oklahoma judg-

ment.   In *State v. Engberg*, 194 Kan. 520, 400 P. 2d 701, cert. den. 383 U. S. 921, 15 L. Ed. 2d 676, 86 S. Ct. 899, we were confronted with a similar argument, and we there held:

"The defendant in a criminal action charged with a felony cannot make a collateral attack upon the judgments of prior felony convictions rendered against him in another state on the ground that he was not represented by counsel in such criminal proceedings, in an effort to defeat application of the habitual criminal statute (G. S. 1949, 21-107a, now K. S. A. 21-107a) authorizing an increased penalty, since the full faith and credit clause of the United States Constitution requires that the courts of this state give full faith and credit to the judgments of the courts of our sister states."   (Syl. ¶ 2.)

We have carefully scrutinized the record in this case and find no error which may be said to have prejudiced the substantial rights of the defendant.

The judgment is affirmed.