No. 44,909

State of Kansas, *Appellee*, v. Douglas McArthur Patterson, *Appellant.*

(434 P. 2d 808)

Opinion filed December 9, 1967.

*Donald A. Jones*, of Manhattan, argued the cause, and *David K. Clark*, of Manhattan, was with him on the brief for the appellant.

*John C. Fay*, county attorney, argued the cause, and *Robert C. Londerholm*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: The defendant, Douglas McArthur Patterson, although charged with second degree murder (K. S. A. 21-402),

was convicted by a jury of the lesser offense of first degree manslaughter (K. S. A. 21-407) upon evidence that on April 3, 1965, he shot and killed his wife, Anneliese. Following denial of a motion for new trial and imposition of sentence to the state reformatory, defendant filed notice of appeal and requested the appointment of counsel. Present counsel, who by court appointment had represented the defendant at trial, was appointed for this appeal.

The questions raised relate to alleged trial errors as well as the propriety of the court's overruling of defendant's motion for new trial.

There were no eyewitnesses to the shooting, but the following sequence of events and circumstances surrounding the incident were shown by the evidence at trial:

The defendant was a soldier living with his wife and two children in a duplex in Manhattan. Sgt. Jon Hosford and his family were occupants of the other half of the building. On April 2, 1965, the day preceding the shooting, the Hosfords' dog was struck by a car. That evening Hosford borrowed defendant's revolver in order to end the dog's life. The defendant got the gun out of his car, where it was kept in a holster under the front seat on the driver's side. Since the revolver was not loaded, defendant and Hosford went into defendant's home, got a box of shells out of a desk drawer, and defendant placed three shells into the gun's chamber. Defendant cautioned Hosford that the safety device on the revolver did not function properly. Hosford used two bullets to kill his dog, and so advised the defendant upon returning the revolver about an hour later. Hosford also told him he could not open the chamber to remove the two spent cartridges, and thus they, plus the one unexpended cartridge, were left in the gun. Before retiring for the night, the defendant laid the revolver on top of the refrigerator in the kitchen of his home.

The next day, as defendant was preparing lunch, he noticed the revolver still lying on top of the refrigerator. He took the gun down, pulled the hammer back, opened the cylinder and removed the two spent cartridges. At this time the telephone rang, and defendant laid the gun down to answer the call. Upon completing his conversation, defendant picked up the gun, put it back on top of the refrigerator, and left the house.

. . After spending the afternoon drinking at several different clubs, defendant returned to his home about 6:30 p. m. Anneliese was

preparing dinner, working near the refrigerator. She started to take something out of the refrigerator and, as she did so, asked the defendant to remove several miscellaneous items—among them the revolver—from atop it. According to defendant's testimony, he complied with his wife's request, and as he was removing the articles, his wife turned and bumped him and the gun accidentally discharged, the bullet striking Anneliese in the head. Defendant telephoned for an ambulance, and also called his friend, Sgt. Clarence Wise, asked him and Mrs. Wise to come to his home, and told them he had shot his wife. When the Wises arrived, about 6:45, the defendant was sitting beside his wife's body and crying. Sgt. Hosford and his wife were already there.

Shortly before 6:30 that evening Sgt. Hosford heard "some argument" and "loud voices" coming from the Patterson household. Hosford had gone outside and was working on his car when he heard what he termed an "explosion." His wife came out of the house to see what had happened. Two or three minutes later the defendant ran to Hosfords' back door, knocked, and returned to his apartment. Hosford went to defendant's back door to inquire what he wanted. Defendant told Hosford he needed Mrs. Hosford to take care of the Pattersons' children, that he'd shot his wife. Defendant asked Hosford if he had left a bullet in the chamber of the gun. Hosford replied, "Yes, didn't you remember?" Defendant acknowledged that he remembered but "not until after I'd shot her." The two men then went into the Pattersons' apartment. Defendant was sobbing and asking if his wife was dead. Inside the apartment Hosford noticed a gun lying beside the kitchen sink on the counter top. He grabbed the weapon, took it to his own apartment, and hid it in some boxes to prevent the defendant from shooting himself— as he had threatened to do.

The ambulance and police officers arrived approximately an hour later. Hosford told Thomas L. Ennis, a military policeman, about having the gun at his apartment. The M. P. went with Hosford to his apartment, got the revolver, and gave it to a police officer who took it back to the Pattersons' apartment. From there it was taken to the police station where the one spent cartridge case was removed.

After arrival of the police officers the defendant was taken to the city jail where he was held pending investigation of the shooting. Subsequently, a complaint was filed charging defendant with second degree murder. Following a preliminary hearing at which he

was represented by Mr. Robert Abbott, defendant was bound over to the district court for trial.

In refutation of defendant's version that the shooting was accidental, the state introduced evidence of the turbulent married life of the Pattersons during the months immediately preceding Anneliese's death. On more than one occasion there had been heated arguments between them in which the defendant had displayed a violent temper. Anneliese bore physical evidence on at least two occasions of having been mistreated by her husband. In the presence of the Wises the defendant had twice threatened to kill his wife, and during the two months preceding the shooting similar threats were overheard by a neighbor residing in the downstairs apartment of the duplex. The defendant himself acknowledged in his testimony that he had told his wife several times that if she ever tried to leave him he would "probably kill her."

Defendant sets forth five specifications of error for our consideration. He first complains that the district court erred in failing to grant his request for continuance of the trial, and as a result he was denied "full and fair representation" by counsel, as required by K. S. A. 62-1304. The record reflects that the preliminary hearing was held on April 22, 1965. The defendant appeared in district court on May 3, at which time Mr. Abbott withdrew as counsel, Mr. Clark was appointed as the defendant's attorney, and the case was set for trial on May 18. On May 10, Mr. Clark filed a motion requesting additional time to prepare the defendant's case. The motion was supported by Clark's affidavit stating that he had not been counsel at the preliminary hearing, that he had not received a copy of the transcript of testimony given at said hearing, that he was scheduled to defend another criminal case on May 17, and that he would not have time to interview witnesses and prepare a defense. On the morning of trial (May 18) the motion was heard and denied by the district court. At the hearing the court noted that on May 14 Mr. Clark had received a copy of the preliminary hearing transcript, which consisted of approximately sixty-eight pages. The court observed further that there was no showing that any witnesses the defendant might want to use lived outside the immediate geographical area, and that if during the trial a situation arose where Mr. Clark would like to have a few minutes' time to talk to a witness, the court would declare a recess and give him opportunity to do so. The court, in overruling the motion,

concluded that it did not appear defendant's rights would be prejudiced by proceeding with the trial. After trial, and at the hearing on the motion for new trial where the matter was again raised, the court found there had been no showing the defendant was prejudiced by his being compelled to go to trial on May 18.

The well-established rule in this jurisdiction is that the granting or denial of a continuance in a criminal prosecution is largely within the sound discretion of the trial court, whose ruling will not be disturbed in the absence of a showing that there has been an abuse of discretion which has prejudiced the defendant's substantial rights. (*State v. Adamson,* 197 Kan. 486, 419 P. 2d 860; *State v. Brown,* 193 Kan. 654, 396 P. 2d 401; *State v. Hickock & Smith,* 188 Kan. 473, 363 P. 2d 541, appeal dismissed 373 U. S. 544, 10 L. Ed. 2d 688, 83 S. Ct. 1545.) The case of *State v. Young,* 196 Kan. 63, 410 P. 2d 256, upon which the defendant relies, is clearly distinguishable on the facts. There, the point of the trial court's ruling on the motion for postponement was so entwined with the defendant's request for other counsel that the holding affords no ground for relief to the defendant here.

From a review of the record we are of the opinion there was a complete absence of any showing that defendant's substantial rights were prejudiced by the lack of a continuance. The defendant was fully and adequately represented by competent, experienced counsel. Upon completion of the trial, the judge was in a much better position than this court to appraise the situation, and his conclusion was justified by the record before us. Hence, the lower court's ruling must stand.

Next the defendant urges that the court erred in admitting the revolver (Exhibit No. 1) into evidence because it was not properly identified and a complete chain of possession after the shooting was not established. The gun was not marked nor was the serial number recorded until after it was taken to the police station. There was ample evidence, however, from witnesses who handled the gun in the interim, tending to establish that it was the same weapon used by Sgt. Hosford to kill his dog and the same one taken by Hosford from the defendant's home immediately after the shooting and thereafter turned over to the police. In fact, the defendant, in his testimony, made no attempt to dispute the state's theory that Exhibit No. 1 was the death weapon. The further argument that "an unbroken chain of custody" was not shown, because the gun

was left unattended and accessible to many persons before the serial number was recorded, cannot be sustained. Under the circumstances previously narrated, any questions about the identification of the weapon, or its possession after the shooting and before the serial number was recorded, were matters which went to the weight rather than the admissibility of such evidence. (*State v. Williams,* 196 Kan. 628, 413 P. 2d 1006; *State v. Montgomery,* 175 Kan. 176, 261 P. 2d 1009.)

Defendant next complains that the court erred in permitting the prosecution, on cross-examination, to hand him the revolver and have him demonstrate that the gun could not be cocked while the cylinder was open, because such demonstration tended to incriminate him. The record does not disclose an objection was interposed to such evidence at trial; consequently, its admission, even if erroneous, cannot be a basis for reversal. (*State v. Adamson,* supra; *State v. Donahue,* 197 Kan. 317, 416 P. 2d 287; *State v. Freeman,* 195 Kan. 561, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981.) Even if properly before us, the argument is untenable. Such evidence was proper on cross-examination to contradict defendant's direct testimony that the weapon was on top of the refrigerator in a cocked position with the cylinder open, that as he took it down he "started to close the cylinder," his wife turned and bumped him, and the weapon accidentally discharged.

Defendant further predicates error upon the court's instruction No. 12 relating to first degree manslaughter. The instruction reads as follows:

"You are instructed that where a person engages in an assault and while so engaged unintentionally shoots and kills another, he is guilty of manslaughter in the first degree within the meaning of this statute.

"You are instructed that by the term 'assault' as used in this instruction, is meant any intention, offer or attempt to do corporal injury to another by force, unlawfully directed against the person of another. The pointing of a gun at another under such circumstances who does not know whether or not it is loaded is an assault."

Again, there was no objection to the instruction at trial, nor was it urged as a ground in defendant's motion for new trial. Furthermore, the other instructions are neither included in the record nor in the trial transcript. Normally, under these circumstances, the point would not be entitled to review. (K. S. A. 60-251 [*b*]; *State v. Booker,* 200 Kan. 166, 434 P. 2d 801; *State v. Freeman,* supra; *State v. Ellis,* 192 Kan. 315, 387 P. 2d 198; *State v. Johnson,* 189 Kan. 571,

370 P. 2d 107.) Notwithstanding the procedural deficiency, the matter will be considered briefly, inasmuch as it relates to the final point raised in this appeal.

The argument advanced in defendant's brief centers on the lack of evidence that the shooting occurred during the commission of an assault. The state's theory was that from all the evidence the jury could conclude that the defendant intentionally pointed the gun at his wife before she was killed and, under such circumstances, would be guilty of an assault, thus permitting the application of the misdemeanor-manslaughter rule as set forth in the instruction. Whether the defendant intended to commit an assault may be inferred from all the facts and circumstances which legitimately permit such an inference. (*State v. Linville,* 150 Kan. 617, 95 P. 2d 332.) A great portion of the evidence has already been related in considerable detail and need not be repeated. The evidence of the discordant marital relationship between the defendant and Anneliese, his previous assaults on her, including his threats to kill her, was competent as bearing on the defendant's motive and intent, particularly since this is a case of marital homicide. (*State v. Scott,* 117 Kan. 303, 235 Pac. 380, opinion on rehearing, 118 Kan. 464, 235 Pac. 380; *State v. Cruse,* 112 Kan. 486, 212 Pac. 81; *State v. McKinney,* 31 Kan. 570, 3 Pac. 356.) In addition, there was evidence of physical factors at the scene of the shooting, including the path of the bullet through the victim's head, which could well cast doubt on the defendant's account of the incident. From all the evidence we believe the jury could find the killing occurred while the defendant was engaged in an assault upon his wife. Accordingly, it was incumbent upon the court to give the instruction. (*State v. Booker,* supra, and cases cited therein.) Some complaint is also made of the court's definition of "assault," but we find the definition legally sufficient. (*State v. Hazen,* 160 Kan. 733, 165 P. 2d 234; *State v. Linville,* supra.)

Defendant's final point—the court erred in overruling his motion for new trial on the ground the verdict was contrary to the evidence—likewise cannot be sustained. Careful scrutiny of defendant's argument reveals his real complaint is the insufficiency of evidence to sustain the verdict. It is obvious the state relied almost entirely on circumstantial evidence to establish the defendant's guilt as against the defense that the shooting was accidental. Whether or not the evidence was incompatible with any reason-

able hypothesis except that of guilt was a question for the jury and trial court. The function of this court in considering the sufficiency of such evidence to sustain an appeal is limited to ascertaining whether there was a basis for a reasonable inference of guilt. Before a verdict of guilty which has been approved by the trial court may be set aside because of insufficiency of evidence, it must clearly be made to appear that upon no hypothesis whatever is there substantial evidence to support the conclusion reached in the trial court. (*State v. Helm,* 200 Kan. 147, 434 P. 2d 796; *State v. Scoggins,* 199 Kan. 108, 427 P. 2d 603; *State v. Wood,* 197 Kan. 241, 416 P. 2d 729.) Out of an abundance of caution we obtained and carefully reviewed the transcript of trial. We find there was a basis in the evidence for a reasonable inference of guilt, and hold there was sufficient, competent evidence to support the verdict.

The judgment is affirmed.