No. 54,636

State of Kansas, *Appellant*, v. Peter H. Ransom, *Appellee*

(661 P.2d 392)

Opinion filed March 31, 1983.

*David R. Platt,* assistant county attorney, argued the cause, and *Steven L. Opat,* county attorney, and *Robert T. Stephan,* attorney general, were on the brief for the appellant.

*Charles A. Chartier,* of Junction City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, C.J.: This is an appeal by the State pursuant to K.S.A. 22-3602(*b*)(1) from an order dismissing an information charging Peter H. Ransom (defendant-appellee) with rape (K.S.A. 21-3502), aggravated battery (K.S.A: 21-3414) and aggravated robbery (K.S.A. 21-3427). At issue is the computation of time for purposes of the appellee's statutory right to speedy trial under K.S.A. 22-3402.

On July 3, 1981, the victim, Ms. B., was attacked, severely beaten, and brutally raped in rural Geary County, Kansas. Twelve days later, on July 15, 1981, the defendant was arrested and charged in district court in case number 81 CR 399 with aggravated kidnapping, rape, aggravated battery and aggravated robbery. Counsel was appointed to represent the defendant at his first appearance on July 17, 1981. Ultimately the defendant retained his own counsel who has represented him throughout these proceedings.

A preliminary hearing was held on August 6, 1981, and the appellee was bound over to stand trial. A week later, on August 13, 1981, the defendant was arraigned and pled not guilty. The defendant remained in confinement until September 10, 1981, at which time he was able to post bond. Trial was set for November

5, 1981. On October 27, 1981, the defendant obtained a continuance to December 3, 1981. On November 30, 1981, the State obtained a continuance to January 18, 1982. On January 14, 1982, the matter was continued by agreement of counsel to March 11, 1982. These continuances were obtained because of difficulties in obtaining essential witnesses.

On March 4, 1982, the State moved for a further continuance, citing difficulty in obtaining two essential witnesses. Both witnesses were doctors who were vital to the chain of forensic evidence in the case, one of whom had conducted the initial examination of the victim and obtained evidence for the "rape kit." Both doctors were planning to be out of the state on the date trial was scheduled; one would be in New York attending a professional meeting and the other would be in Minnesota taking his medical board examinations. At the hearing on the earlier motion for continuance granted January 14, 1982, the court expressed its concern about the long delay in bringing the defendant to trial and indicated that counsel for both sides should *take steps to ensure that essential witnesses would be available for trial scheduled March 11, using compulsory process if necessary.*

At the time of the hearing on March 5, 1982, three continuances had been granted and a total of 121 days had elapsed from the arraignment which were chargeable to the State. The State informed the court that approximately 60 days were left of the 180 days allowed by K.S.A. 22-3402 to bring the defendant to trial. The defendant's counsel indicated he had no objection to the requested continuance. Although the court recognized that technical problems in trying the case existed which were not the fault of either party, the court denied the motion to continue because of the number of times the case had previously been continued. The court further determined that should the State elect to dismiss the action no prejudice would occur to the defendant.

The State then orally moved to dismiss the case without prejudice. In granting the motion the court cautioned counsel that the speedy trial issue could be a problem if the case was refiled.

Four days later, on March 9, 1982, the State filed identical charges against the defendant in district court case number 82 CR 111. The preliminary hearing was continued at the request of

the defendant to March 31, 1982. At that time the appellant waived the preliminary hearing and pled not guilty. Trial was set for May 3, 1982. Due to the unavailability of an essential witness the State moved for a continuance on April 30, 1982. Trial was rescheduled for June 9, 1982.

A hearing was held on June 7, 1982, to consider motions by the State to hold a *Jackson v. Denno* hearing and to endorse additional witnesses and a motion by the defendant to dismiss for failure to comply with the speedy trial provisions of K.S.A. 22-3402. Finding the defendant's speedy trial motion dispositive the court considered it first.

The court found that 121 days which were chargeable to the State had elapsed from the time of the first arraignment until dismissal of the charges on March 5, 1982, in case number 81 CR 399, and that 90 days had elapsed from the date the charges were filed in case number 82 CR 111. When combined, the time chargeable to the State in these two cases exceeded the 180-day time limit set forth in 22-3402(2). In its memorandum and journal entry of dismissal the trial court specifically rejected the State's proposed finding of fact that the March 5, 1982, dismissal was a matter of necessity, and made the following conclusion:

"The Court finds that 82 CR 111 is a case where no good reason has been shown to extend the legislatively imposed rule of limitations for reason urged by the State. Accommodation of the States witnesses by the prosecutor (thereby delaying the case beyond the 180 day rule plus the statutes' permitted extensions) is not a reason sanctioned by statute or case law to extend the period within which a case may be tried."

The sole issue presented on appeal is whether the trial court properly combined the post-arraignment time chargeable to the State in case number 81 CR 399 with the post-arraignment time in case number 82 CR 111 in calculating the 180-day limit imposed by K.S.A. 22-3402(2) for bringing the defendant to trial. Where, as here, the defendant is released on bond, K.S.A. 22-3402(2) governs the time limits within which the defendant must be brought to trial following arraignment. It provides:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

The right to speedy trial provided by this statute does not attach until the defendant is arraigned. *State v. Taylor,* 3 Kan. App. 2d 316, Syl. ¶ 4, 594 P.2d 262 (1979); *State v. Smith,* 215 Kan. 34, 39, 523 P.2d 691 (1974). For this reason it is important to note that the time chargeable to the State in the second case did not commence until March 31, 1982, when the defendant was arraigned, and not on March 9, 1982, when the case was refiled and the defendant arrested, as the trial court erroneously concluded. The time elapsed from the defendant's arraignment to June 7, 1982, when the case was dismissed, totaled 68 days, for an aggregate sum of time chargeable to the State in the two cases of 189 days.

The opposing views as to the effect of the dismissal of original charges and the filing of subsequent identical charges on a defendant's right to speedy trial is set forth in 21A Am. Jur. 2d, Criminal Law § 852.

"Under a statute which provides that an accused must be discharged if not brought to trial within a certain period after arrest or indictment, there are two views as to the effect of the dismissal of the original indictment or information and the bringing of a subsequent indictment or information. One is that the statutory time is to be computed from the time of the later indictment or information, the theory being, broadly, that the original proceeding became a nullity on its dismissal and that the new accusatory pleading represents the institution of a new and independent proceeding to which the statute can be applied without reference to anything which may have previously occurred. The second theory applied in such circumstances is that to permit the state to deprive an accused of the right to a discharge by the simple expedient of nolle prossing the original indictment and procuring a new indictment for the same offense is, in effect, to rewrite the statute, which, especially since statutes of the kind in question were passed to implement the constitutional guaranty of a speedy trial, ought rather to be given such a construction by the courts as to secure the ends sought by the legislature."

See also 22A C.J.S., Criminal Law § 468; Annot., 30 A.L.R.2d 462.

Where the State fails to bring the accused to trial within the time limits fixed by the statute, and where the delay is not due to the application or fault of the defendant or to extensions of time as provided by K.S.A. 22-3402(3), Kansas appellate courts have not hesitated to enforce the legislative mandate and order the defendant discharged. *State v. Warren,* 224 Kan. 454, 457, 580 P.2d 1336 (1978); *State v. Cox,* 215 Kan. 803, 528 P.2d 1226 (1974); *State v. Sanders,* 209 Kan. 231, 495 P.2d 1023 (1972).

However, delays which are the result of the application or the fault of the defendant are not to be counted in computing the statutory period. It is the State's obligation, not the accused's, to provide the defendant with a speedy trial in conformity with both the Constitution and statute. *State v. Warren*, 224 Kan. at 456. Finally, should the State desire a continuance it must bring its motion within the appropriate statutory period. *State v. Cox*, 215 Kan. at 805.

The issue presented here has been addressed by this court previously in *State v. Fink*, 217 Kan. 671, 538 P.2d 1390 (1975), and *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 589 P.2d 626 (1979). In *Fink* the defendant was originally charged on April 10, 1973, but because the defendant was not provided with a preliminary hearing within the time provided by statute the charges were dismissed on November 27, 1973. Shortly thereafter the case was refiled and the defendant moved to dismiss. In June 1974, the lower court held that the fourteen-month delay from the time of the defendant's arrest in the first case to the hearing on the motion to dismiss had violated the defendant's right to speedy trial and dismissed the charges. On appeal this court reversed, holding:

"The dismissal or *nolle prosequi* of a criminal charge entered prior to the arraignment and trial of an accused is not a bar to a subsequent prosecution for the same offense. (*Kenreck v. State*, 198 Kan. 21, 24, 422 P.2d 894 and authorities cited.) The same is true where a charge has been dismissed against a prisoner prior to the expiration of the time limitation, and a second information is filed. The time elapsing between the filing of the first information and the dismissal of the cause by the court is not to be counted in determining the time elapsed between the filing of the second information and trial." 217 Kan. at 675.

*Fink* is readily distinguishable from the present case in that the dismissal of the first information occurred before arraignment and therefore K.S.A. 22-3402 did not apply. Furthermore, the first information was dismissed pursuant to the defendant's own motion.

In *Cuezze* defendants Cuezze and Houston were indicted and arraigned on charges of making false writings and conspiracy. Months later, before dismissing the charges, the State filed identical charges against the defendants in a second case, naming Faltico as an additional defendant. Subsequently the State dismissed the first case against Cuezze and Houston. The time elapsed from arraignment on the first charges until the dismissal

of the second case was over 300 days. The Supreme Court distinguished the case from *Fink,* emphasizing that in *Cuezze* the second case was filed while the first case was still pending so that the defendants had remained continuously charged from the time of their first arraignment.

In the opinion the court said:

"[T]he purpose of K.S.A. 22-3402 is to implement and define the constitutional guarantee of a speedy trial and the statute establishes certain maximum time limits within which a defendant must be brought to trial. Absent a showing of necessity, the State cannot dismiss a criminal action and then refile the identical charges against the same defendant and avoid the time limitations mandated by the statute. As pointed out by the trial court, our prior cases relied upon by the State arose out of different factual situations or issues than those now before the court. It should also be noted that no attempt was made by the State to secure additional time in the first case to develop evidence as contemplated by K.S.A. 1978 Supp. 22-3402(3)(c)." 225 Kan. at 278.

In the present case the trial court specifically rejected the State's proposed finding of fact that the dismissal of the first case was a matter of necessity, although it was recognized at the time the motion for continuance was denied that technical problems had arisen in the case which were not the fault of either party. Under the holding in *Cuezze,* as there was no showing of necessity, the State here could not dismiss its first case, 81 CR 399, and refile the charges in case number 82 CR 111 to avoid the time limitations mandated by K.S.A. 22-3402. Support for this result is found in a recent opinion by the Court of Appeals which involves a situation factually similar to the instant case, also arising from Geary County. In *State v. Hunt,* 8 Kan. App. 2d 162, 651 P.2d 967 (1982), the defendant was initially arraigned on November 10, 1980. On March 31, 1981, the date trial was to commence, the State moved to dismiss without prejudice because an essential witness was not available. Four days later the State refiled the charges. The defendant was arraigned for the second time on May 13, 1981. By the time the defendant was brought to trial on July 27, 1981, 259 days had elapsed from the first arraignment on November 10, 1980. Finding the combined time in the two cases to be in excess of 180 days the Court of Appeals held:

"We find *Cuezze* to be controlling and hold that defendant's statutory right to a speedy trial on the aggravated assault charge was violated. Though there was a four-day gap between the dismissal of the first and the filing of the second information, the dismissal resulted from the State's own motion and was not accompanied by a showing of necessity." 8 Kan. App. 2d at 166.

The holding in the case was succinctly stated in the syllabus:

"When an information is dismissed by the State on its own motion after the defendant has been arraigned, and thereafter the State causes to be filed a new information charging the same offense, the State, when calculating the speedy trial time requirements of K.S.A. 22-3402, must include the time elapsed between arraignment and dismissal of the first prosecution together with the time elapsed between arraignment and trial of the second prosecution.

"The State cannot avoid the statutory speedy trial time limits by dismissing an information and subsequently refiling the charges. The proper procedure for the State to follow is to obtain a continuance pursuant to K.S.A. 22-3402(3)." 8 Kan. App. 2d 162, Syl. ¶¶ 2, 3.

In the case at bar the State did seek to obtain a continuance prior to dismissing the charges. The trial judge apparently did not believe a fourth continuance in the case was justified, in accord with his prior admonition to the parties concerning the necessity of bringing the defendant to trial without lengthy delay and to ensure that essential witnesses would be available for trial, serving them with compulsory process if necessary. Both doctors, whose attendance at trial was sought, had been supoenaed shortly after the continuance granted on January 14, 1982. However, upon learning these witnesses had conflicting plans to be out of the state on the date of trial, the State sought a continuance to avoid interrupting the witnesses' plans. There is no indication in the record that the State made any attempt to enforce the subpoenas and require the witnesses to be present at trial; rather, it appears the prosecutor was willing to allow the witnesses to disregard the subpoenas and, instead, seek a continuance. The grant or denial of a continuance in a criminal case lies largely in the sound discretion of the trial court. *State v. Adamson,* 197 Kan. 486, Syl. ¶ 1, 419 P.2d 860 (1966). Under the circumstances in this case we cannot say the trial judge abused his discretion in denying the State's motion to continue.

Upon dismissing the second case the trial court found that the dismissal of the first case was not a matter of necessity. The State claims that because the testimony of the two doctors was vital to the chain of forensic evidence the motion to dismiss was a matter of necessity. However, the witnesses were unavailable because, despite the trial court's prior admonition, the State was apparently unwilling to enforce the subpoenas ordering the witnesses to appear at trial, in order to accommodate their personal schedules. We cannot agree that accommodation of witnesses is a

matter of necessity. A criminal trial is a serious affair to which both federal and state constitutions guarantee due process of law and other rights, such as the right to confront witnesses and the right to speedy trial. A person who is to be a witness in a criminal trial may be personally inconvenienced by having to appear; however, such inconvenience is overshadowed by a defendant's fundamental right to fair adjudication of his case in the administration of criminal justice. It is the primary responsibility of the parties to ensure the attendance of witnesses in court, and it is generally accepted that where the party seeking a continuance has failed to exercise due diligence to procure the attendance of necessary witnesses, the continuance may be properly denied. See *State v. Daigle*, 220 Kan. 639, 644, 556 P.2d 400 (1976), *cert. denied* 430 U.S. 983 (1977); *State v. Hoggard*, 146 Kan. 1, 3, 68 P.2d 1092 (1937); 22A C.J.S., Criminal Law §§ 486, 503b(1), 513(3); 3 Wharton's Criminal Procedure § 428 (12th ed. 1975).

We agree with the decision of the Court of Appeals in *Hunt* finding *Cuezze* to be controlling in this situation. Where, as here, the dismissal of criminal charges results from the State's own motion and is not accompanied by a showing of necessity, and a new information is filed charging the same offense, we hold that when calculating the speedy trial time requirement of K.S.A. 22-3402 a court must include the time elapsed between arraignment and dismissal of the first prosecution together with the time elapsed between arraignment and trial of the second prosecution. A contrary rule would allow the State to dismiss and refile charges against a defendant *ad infinitum* which would contravene the purpose of K.S.A. 22-3402 and could lead to an abuse of legal process.

The judgment of the lower court is affirmed.

MILLER, J., dissenting: The State, for good reason, sought and was granted one continuance; the defendant, also for good reason, was granted two continuances. The case was finally set for trial on March 11 and 12, 1982. When the prosecutor learned, among other things, that one of his subpoenaed medical witnesses was scheduled to take the Minnesota medical board examinations at the time fixed for trial and another was planning to be out of state, he sought a second continuance, asking the court for a different trial setting. For this kindly and under-

standing gesture, the prosecutor is soundly criticized by the majority, who would have required the enforcement of the subpoenas, medical board and the doctors' careers notwithstanding. The trial court denied the request without making any attempt to fix a trial date on which the witnesses could be present. The ultimatum to the prosecutor was loud and clear: Try the case on March 11, witnesses or not, or dismiss. The only reason advanced by the trial court in denying the continuance was that the Supreme Court, by its GUIDELINES and its constant harping on the prompt disposition of cases, is forcing trial judges to overlook the equities and justice of matters before them and to consider only one thing—the speedy termination of cases. This is not the first time we have heard this philosophy stated and seen it relied upon, and it will not be the last. An affirmance in this case will reinforce this erroneous, unfortunate, and all too widespread belief.

Our GUIDELINES are not designed to encourage trial courts to run roughshod over litigants and witnesses. These people deserve to be treated with understanding and consideration, even though it may take a few days longer to complete a given case. In my judgment, this case should have been rescheduled ten days or two weeks later, tried, and finished; the one physician could have taken his Minnesota board, the other could have attended the New York conference, and no one would have been inconvenienced. There is absolutely nothing in the record to suggest that this could not have been done.

Since the State was compelled to dismiss the original case, the *Cuezze* doctrine should not be applied.

McFARLAND and HERD, JJ., join the foregoing dissenting opinion.

McFARLAND, J., dissenting: I believe the majority opinion has approached the issue from the wrong direction. Rather than mechanically adding the two prosecutions together and then determining whether, on June 7, 1982, the State had made an adequate showing of necessity as of that date to extend the 180-day speedy trial limitation of K.S.A. 22-3402, I believe the proper focus should be on the circumstances of the March 5, 1982, dismissal of the first case. If the first case was dismissed upon a showing of good cause, was not occasioned by the State's

lack of diligence, was not prejudicial to any rights of the defendant, and was not done as a part of any plan or scheme by the State to harass defendant, defeat the statutory speedy trial requirements, or in furtherance of other bad-faith motives, then the two prosecutions should not be added together in considering the speedy trial question.

In reviewing the circumstances leading to the dismissal of the first case, I find the following facts to be particularly pertinent.

On March 4, 1982, the State moved for a continuance of the March 11, 1982, trial date, filing the following affidavit in support thereof:

AFFIDAVIT

"Comes now Steven L. Opat, of lawful age, having first been sworn upon his oath, hereby states and avers:

"That he is the chief prosecutor in case number 81-CR-339, captioned in re: State vs. Peter Ransom and advises the Court of the following:

"That this matter is set for trial on the 11th and 12th days of March, 1982; that all witnesses were subpoenaed shortly after the last hearing, where the defendant obtained a continuance for the reason that a key witness was unavailable.

"That speaking with certain witnesses, affiant has learned that Doctors Alex Scott and Gerald Daniels will be out of the jurisdiction of this Court for the following reasons;

"That Doctor Alex Scott, who is vital to the chain of evidence concerning certain forensic evidence which will be introduced at the trial of this case, will be in New York City, New York, attending a professional meeting for which he has had a long standing commitment;

"That Doctor Daniels, who initially examined the victim in this case will be in the State of Minnesota taking his boards which must be accomplished in furtherance of his professional medical career;

"That affiant has also learned that Curtis Barefield, an essential witness, has absconded the jurisdiction of the Court, said Barefield being on probation from the District Court of Geary County, Kansas;

"That these witnesses are essential to the State's case and without their testimony, the State cannot proceed to trial as scheduled;

"Further affiant saith naught.

/s/ Steven L. Opat
Geary County Attorney"

These statements, which have never been controverted, show necessity. Dr. Daniels was scheduled to take his "boards" in Minnesota, which is clearly a date not within his control to alter. The taking of "boards" by a physician is a significant event in his professional career. Dr. Daniels was a key witness for the State as he was the physician who had initially examined the victim and had taken the samples from her which comprised the "Rape

Kit." These samples were the basis for much of the testimony of the State's expert from the Kansas Bureau of Investigation Laboratory.

Dr. Scott was the physician who, by Court order, had taken blood samples, saliva samples and pubic hairs from the defendant and submitted same to the Kansas Bureau of Investigation Laboratory. Based upon the testimony of these two physicians, K.B.I. chemist Eileen Burnau was prepared to show the victim's attacker was within a certain percentage of the male population which included defendant. Dr. Scott was obviously an important witness in the case and there is no showing that his commitment to the New York City meeting was a ruse, not of significant importance to him, or could have been rescheduled.

Curtis Barefield was a witness the State intended to call to testify as to defendant's prior inconsistent statements and declaration against penal interest.

The March 5, 1982, hearing on the State's motion for continuance is illuminating. The transcript of that hearing, in relevant part, is as follows:

"Now the Court wants to take up the matter of the proposed—or, requested continuance.

"MR. CHARTIER [defense counsel]: Your Honor, in regard to the defendant, the only thing I can say is I know I went through this matter the last time and we requested a continuance because of some unavailability of witnesses and *I understand Mr. Opat's dilemma and so I am not going to personally object to it because—and there are some witnesses that are out of state that, in his affidavit, that we would, as far as the defendant is concerned, would like to have them present to testify personally in the matter.*

. . . .

"THE COURT: . . . My problem is, as I recall, this is a case that's now been continued three times.

"MR. OPAT: It has.

"THE COURT: And *we now have a computer friend that oversees us* to the point that it even knows what the median time of disposition of our felony criminal work is.

"*The Court finds that no prejudice will occur to the defendant if the matter is dismissed without prejudice;* that the matter has been pending a sufficient length of time for trial but for the *technical problems which* do *sometimes arise* in the trial of criminal cases; the *Court finds that it is neither the fault of the State nor of the defendant that the present technical problems present themselves. The Court does not believe that further continuance of the case is the proper way to handle the case, considering the guidelines furnished by the Supreme Court for the handling of criminal cases and the Court specifically finds that neither side is operating tactically to try to gain an advantage over the other* in their positions stated here today.

"Since the matter has not been considered on its merits and since the Court has made the aforementioned findings and since the *Court does not find lack of diligence on anybody's part,* the Court believes the appropriate handling of the case is to deny the motion to continue at this time.

"Mr. Opat: I would like to, at this time, make an oral motion that I be allowed to dismiss the matter without prejudice, pursuant to the Court's ruling.

"The Court: Mr. Chartier?

"Mr. Chartier: I have no objection to that.

"The Court: Again, reiterating the findings just announced with respect to the motion to continue, the motion to dismiss is granted." (Emphasis supplied.)

As noted in the majority opinion, we said in *State v. Cuezze, Houston & Faltico,* 225 Kan. 274, 589 P.2d 626 (1979):

"As we said in *Warren* [224 Kan. 454, 580 P.2d 1336 (1978)], the purpose of K.S.A. 22-3402 is to implement and define the constitutional guarantee of a speedy trial and the statute establishes certain maximum time limits within which a defendant must be brought to trial. *Absent a showing of necessity,* the State cannot dismiss a criminal action and then refile the identical charges against the same defendant and avoid the time limitations mandated by the statute. As pointed out by the trial court, our prior cases relied upon by the State arose out of different factual situations or issues than those now before the court. It should also be noted that *no attempt was made by the State to secure additional time in the first case to develop evidence* as contemplated by K.S.A. 1978 Supp. 22-3402(3)(c)." 225 Kan. at 278. (Emphasis supplied.)

The trial court found: (1) technical problems had developed in the case which were not the fault of either party; (2) no prejudice to the defendant would result from a dismissal; (3) neither side was trying to gain a tactical advantage over the other; and (4) both parties had acted diligently. Inherent in these findings is the showing of "necessity" referred to in *Cuezze.*

Additionally the State did attempt to secure additional time—a significant factor referred to in *Cuezze.* Further, the defendant desired the presence of the witnesses. It was the trial court's idea to dismiss the case out of concern for statistics kept by the Judicial Administrator. The trial court simply did not want to be charged statistically with a case whose termination would exceed the guidelines fixed by our court. These guidelines are purely intramural in nature and are merely guidelines which were developed for purposes of improving judicial administration. They do not and cannot alter or affect any rights of litigants. They are matters wholly within the court system itself.

The dismissal of the first case was clearly upon a showing of necessity. In my view, that finding is determinative of the issue

before us and precludes adding the two cases together for statutory speedy trial purposes. The second case did not exceed the 180-day period, so no issue of speedy trial arises.

I would reverse and remand the case for trial.

MILLER and HERD, JJ., join the foregoing dissenting opinion.