No. 54,636

STATE OF KANSAS, *Appellant*, v. PETER H. RANSOM, *Appellee.*

(673 P 2d 1101)

Opinion on rehearing filed December 2, 1983. (For original opinion affirming see 233 Kan. 185, 661 P.2d 392 [1983].)

*Steven L. Opat,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Charles A. Chartier,* of Junction City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This appeal by the State from an order dismissing an information charging the defendant with aggravated kidnapping, rape, aggravated battery and aggravated robbery was heard by this court in January 1983, and a divided court affirmed the dismissal. The Chief Justice's opinion, accurately stating the facts, the issue, and the decision of the majority, was filed on March 31, 1983. *State v. Ransom,* 233 Kan. 185, 661 P.2d 392 (1983). In May, we granted a rehearing. The appeal was reargued by counsel, and we now reverse.

The facts are fully set forth in the earlier opinion. The defendant was arraigned in Geary District Court in case No. 81 CR 399 on August 13, 1981, on charges of aggravated kidnapping, rape, aggravated battery and aggravated robbery. On March 4, 1982, the State requested a continuance, citing as grounds its difficulty in obtaining the presence of three witnesses, including two doctors who planned to be out of state on the proposed trial date. On March 5, the trial court denied the requested continu-

ance, and the State immediately moved to dismiss the case without prejudice. That motion was granted. At that time, 121 days were chargeable to the State. Defendant had been free on bond. Four days later a new case, No. 82 CR 111, was filed. The new case charged the defendant with the same offenses. Defendant was arraigned on March 31, 1982. Trial was set to commence on May 3, 1982. The State again experienced trouble securing the attendance of an out-of-state medical witness, and moved for a continuance. The trial court granted the motion on April 30 and set the case for trial at 8:30 o'clock a.m., on June 9, 1982. On June 7, defendant moved for discharge and the trial court sustained that motion. The court found that under the doctrine adopted by this court in *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 589 P.2d 626 (1979), the time spans chargeable to the State in the two cases must be totalled; that the defendant had been held to answer in both cases for a total of 189 days; and that since the State had failed to bring him to trial within the 180-day period prescribed by K.S.A. 22-3402(2), he was entitled to be discharged. That statute provides as follows:

"(2) If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

The delay in this case did not happen as a result of the application or fault of the defendant, and no continuance was ordered by the trial court under subsection three.

In addition to *Cuezze*, two other cases involving our speedy trial statute should be discussed. In *State v. Fink*, 217 Kan. 671, 538 P.2d 1390 (1975), we held that the time limitations of K.S.A. 22-3402 do not commence to run until a defendant is arraigned, and that the time between arrest and arraignment is not to be included in computing the 90-day or 180-day periods within which the accused must be brought to trial. In *Fink*, the original proceeding was dismissed prior to arraignment, and thus the statute did not come into play. In *State v. Hunt*, 8 Kan. App. 2d 162, 651 P.2d 967 (1982), the defendant was originally charged with aggravated assault and unlawful use of weapons. Hunt was arraigned on November 10, 1980. On March 31, 1981, the date on which trial was to take place, the State moved to dismiss the

charges without prejudice as one of the State's witnesses could not be located. The witness was not an "essential" witness, and the State did not make a showing of necessity. On April 3, 1981, a new information was filed charging Hunt with aggravated battery, unlawful use of weapons, and making a terroristic threat. That information was amended before Hunt was arraigned, altering the aggravated battery charge to aggravated assault, and dropping the terroristic threat charge. On May 13, 1981, the defendant was arraigned on the amended information. A jury trial was held on July 27, 1981, 75 days after arraignment in the second case, but 259 days after arraignment in the original case. The Court of Appeals reversed Hunt's conviction on the aggravated assault charge, holding that since the State dismissed the original prosecution without showing necessity, the time between arraignment and dismissal on the original charge had to be added to the time between arraignment and trial in the second case in order to calculate the 180-day period allowable by statute. When this was done, it was readily apparent that the time had expired prior to trial and Hunt was entitled to be discharged. The decision was based upon our holding in *Cuezze,* which the Court of Appeals held to be controlling. Due to factual differences, neither *Fink* nor *Hunt* is helpful here.

We turn now to the *Cuezze* case. K.S.A. 22-3402 does not deal with the voluntary dismissal of charges by the State and the inclusion of like charges in a new or subsequent complaint or information. We dealt with that problem in *Cuezze.* There, Cuezze and Houston were charged in the original information with two counts of making a false writing and two counts of conspiracy. Both were arraigned on those charges, Houston on May 20, 1977, and Cuezze on June 13, 1977. In May 1977, the State secured additional information linking Faltico to the illegal conduct. Over three months later, in September 1977, the State filed a new case against Cuezze, Houston and Faltico, and sometime thereafter the State dismissed the original case against Cuezze and Houston. Both defendants were arraigned on the new charges on January 19, 1978. The trial court dismissed the charges against both Cuezze and Houston on May 18, 1978, and we affirmed that dismissal, finding that K.S.A. 22-3402(2) had been violated. We said:

"As we said in *Warren* [*State v. Warren,* 224 Kan. 454, 457, 580 P.2d 1336

(1978)], the purpose of K.S.A. 22-3402 is to implement and define the constitutional guarantee of a speedy trial and the statute establishes certain maximum time limits within which a defendant must be brought to trial. *Absent a showing of necessity,* the State cannot dismiss a criminal action and then refile the identical charges against the same defendant and avoid the time limitations mandated by the statute. As pointed out by the trial court, our prior cases relied upon by the State arose out of different factual situations or issues than those now before the court. It should also be noted that no attempt was made by the State to secure additional time in the first case to develop evidence as contemplated by K.S.A. 1978 Supp. 22-3402(3)(c)." (Emphasis supplied.) 225 Kan. at 278.

In Kansas, we recognize both the constitutional right to a speedy trial and the right to a speedy trial enunciated by K.S.A. 22-3402. See *State v. Rosine,* 233 Kan. 663, 664 P.2d 852 (1983), where both rights are fully discussed and distinguished. Here, there is no claim of a constitutional violation. In this case we are only concerned with the statutory right.

*Cuezze* establishes the principle that the State cannot dismiss a criminal action and commence a new one containing identical charges—absent a showing of necessity—and avoid the time limitations of K.S.A. 22-3402. We have not decided what constitutes *a showing of necessity* under *Cuezze,* nor have we determined what time limitations apply if the State does dismiss and refile *upon a showing of necessity.*

The literal language of *Cuezze* implies that the time chargeable to the State in the first action is to be added to that accrued in the second action *only* if the dismissal is made *without* a showing of necessity; ergo, if the dismissal is made *with* a showing of necessity, the computation of the statutory time, whether it be 90 or 180 days, commences anew upon the filing of the second case and arraignment therein. This is logical, and we so hold. See *State v. Haislip,* 234 Kan. 329, 673 P.2d 1094 (1983). To avoid the statutory time limitations, the State must make a showing of necessity.

We turn now to the facts in the case before us in order to determine whether the State made a showing of necessity at the time it dismissed the original case against Ransom. The State moved for a continuance of the trial date for the reason that one witness had absconded and two of its principal witnesses had serious conflicts with the trial setting. Both of the latter were physicians; one was stationed at Fort Riley, Kansas, at the time the offense was committed, and both were significant and important State witnesses. One had conducted the initial examina-

tion of the victim and had taken the "rape kit" which was submitted to the Kansas Bureau of Investigation laboratory. The other had taken blood samples, saliva samples, and pubic hairs from the defendant, pursuant to the Court's order, and these had been submitted to the same laboratory for examination and comparison. The testimony of both witnesses was thus necessary to lay the foundation for the critical expert testimony. Dr. Daniels was not a local resident; he was only temporarily stationed at Fort Riley, and he had left that station and had been separated from the military service before the case could be tried. Dr. Daniels was scheduled to take his Minnesota medical board examinations at the time of trial. This event, as Justice McFarland pointed out in her dissent to the original opinion, 233 Kan. at 194, is a significant event in a physician's professional career and not a date which he can control or alter. The other physician had a long-standing commitment to attend a professional meeting in New York City. The trial court, upon hearing the State's motion, made the specific findings set forth verbatim in Justice McFarland's dissent, 233 Kan. at 195-96. In short, the court found that no prejudice would occur to the defendant if the matter was dismissed without prejudice; that technical problems in securing the appearance of witnesses had arisen; that these problems were neither the fault of the State nor of the defendant; that neither side was operating tactically to try to gain an advantage over the other; and that both parties had acted diligently. The court concluded, however, that in view of the Guidelines adopted by the Supreme Court for the handling of criminal cases, the motion for a continuance must be denied. The State promptly moved to dismiss without prejudice. The journal entry accurately reflects this action:

"WHEREUPON, the Court considers the motion of the State for a continuance. The Court entertains the statements of counsel and ascertains that there is no objection from the defendant to the continuance proposed by the State of Kansas. The Court further considers the file in this case and the reasons proffered by the State for the proposed continuance. The Court specifically notes that this case has been continued three (3) times previously and the Court further notes that the County Attorney has exercised due diligence in attempting to secure the attendance of the witnesses essential to this cause. In considering the Motion, the Court finds, however, that certain guidelines proposed by the Supreme Court must likewise be considered in determining whether or not the motion should be granted. The Court, therefore, finds based on the evidence previously adduced before it, based upon the evidence presented herein, and based upon the

guidelines and case law which pertains to the issues raised herein, that the motion for a continuance should not be granted. The Court specifically finds that in denying said motion, however, that the State is not attempting to obtain a tactical advantage in seeking a continuance, that no prejudice has adhered to the defendant thus far, in terms of his right to a speedy trial as the same is statutorily defined.

"The Court finds that neither party has been less than diligent in their efforts to bring this matter to trial.

"WHEREUPON, the State moves to dismiss this matter without prejudice, stating to the Court that the same being a need of necessity since the State is unable to proceed without the testimony of the three (3) witnesses that were mentioned in their affidavit.

"WHEREUPON, the Court, based on its previous rulings and hearing no objection from the defendant's counsel, finds that the matter should be dismissed without prejudice. The Court further adopts its previous rulings. . . .

"It Is So Ordered."

While the judge did not specifically find that the State made a showing of necessity, such a finding is implicit in the record and in the findings made. The State had its witnesses under subpoena, but it was wary lest, in the face of the serious conflicting commitments, the witnesses would not appear. If the State proceeded with trial and either one of the witnesses failed to appear, the State's case would be badly crippled. True, the State could later cite the witness for contempt, but that would not fill the resulting void in the State's presentation of its criminal case against the defendant. Witnesses do not always appear, even though they are ordered to do so. Some are stricken on the way to the courthouse; others are hospitalized and undergo surgery. Such problems cannot be anticipated. Other conflicts, however, can. Professional examinations, such as bar, medical and dental examinations, are given only at stated times and places; and an aspiring professional might well be tempted to ignore a subpoena which conflicted with such an examination, even in light of the probable contempt citation. The State anticipated this and sought a different trial setting within the remaining 59 days available to it within the statute. Upon the denial of its motion for a continuance, the State dismissed and refiled rather than chance a trial at which one or more vital witnesses would be absent.

Upon this record, we conclude that the State made a showing of necessity. The *Cuezze* doctrine, therefore, is inapplicable. The dismissal being made upon a showing of necessity, the computation of the statutory time commenced anew. One hun-

dred eighty days had not expired from the date of arraignment, March 31, 1982, to the date of dismissal.

The judgment is reversed, with instructions to set aside the dismissal.

LOCKETT, J., concurring: *State v. Ransom* was set for trial May 3, 1982. The 180-day limitation imposed by K.S.A. 22-3402 had not expired. On April 30, 1982, prior to the trial date, the State requested a continuance because it was unable to contact a necessary witness. The trial court granted the State a continuance; later the judge notified the parties by letter he had rescheduled the trial for June 9, 1982. The State's necessary witness, who had received his subpoena, appeared to testify May 3, 1982.

Court dockets and trial settings are controlled by the courts. The trial judge had the choice when to set the case for trial; he alone chose June 9, 1982. The trial court's decision to set the June 9, trial date fell within the time limitation imposed by K.S.A. 22-3402 because K.S.A. 22-3402(3)(*d*) allows an additional 30 days to be added to the 180-day limitation for trial. Therefore, the June 9, 1982, trial setting was not in violation of K.S.A. 22-3402.

SCHROEDER, C.J., dissenting: It is respectfully submitted the judgment of the trial court should be affirmed for all of the reasons stated in the original opinion filed in this case on March 31, 1983. *State v. Ransom,* 233 Kan. 185, 661 P.2d 392 (1983).

The only additional information submitted to the court on the rehearing of this case was the admission of the prosecuting attorney in oral argument that the essential witness upon whom the State was depending for its case, a doctor who conducted the original examination of the victim and obtained evidence for the "rape kit," and who had been subpoenaed to appear on May 3, 1982, the date set for trial, appeared in his office pursuant to the subpoena on May 3, 1982. It was the absence of this witness, whom the prosecuting attorney considered essential and unavailable, that led to the dismissal of the original charges filed against the defendant and, after the refiling of identical charges, the subsequent continuance sought by the prosecuting attorney. Clearly, this fortifies the decision of the trial court that the State failed to bring the defendant to trial within the 180-day time limitation, and that there was no necessity for a continuance.

PRAGER and HOLMES, JJ., join in the above dissent.