NOT DESIGNATED FOR PUBLICATION

No. 113,364

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-Appellee*,

v.

PEDRO CHAPA,
*Appellee/Cross-Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed July 1, 2016. Affirmed in part and remanded with directions.

*Tamara S. Hicks,* assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*J. Scott Koksal*, of Lindner & Marquez, of Garden City, for appellee/cross-appellant.

Before MCANANY, P.J., PIERRON and SCHROEDER, JJ.

*Per Curiam*:  A jury convicted Pedro Chapa of one count of aggravated indecent liberties with a child, criminal threat, and aggravated intimidation of a witness. Before trial, Chapa challenged the criminal complaint by arguing that his speedy trial rights had been violated, but the district court denied his motion to dismiss. At sentencing, the district court departed downward from the statutory life sentence presumed for the aggravated liberties conviction and, instead, sentenced Chapa under the grid. The State appeals the downward departure, and Chapa cross-appeals his convictions. We affirm.

1

Chapa cross-appeals and argues that his statutory and constitutional speedy trial rights were violated when the State dismissed the initial criminal complaint against him without a showing of necessity, refiled the same charges in a new complaint, and did not begin trying him within the speedy trial window.

We find the chargeable time to the State between Chapa's first arraignment and the dismissal of the charges and between his second arraignment and trial totaled 88 days, well within the 150-day statutory speedy trial period. Additionally, Chapa abandoned his constitutional argument by failing to provide evidence or argument related to the reason for the trial delay, a necessary factor of our analysis.

On August 15, 2104, the State filed a 13-count criminal complaint against Chapa. The complaint included, among other charges, one count of aggravated indecent liberties with a child, an off-grid offense, a level 9 person felony criminal threat, and felony aggravated intimidation of a witness, a level 6 person. Following a preliminary hearing and several motions, the State filed two amended complaints, reducing the charges Chapa faced to 10. Chapa was arraigned on October 31, 2014.

Chapa filed a motion to dismiss the second amended complaint, arguing the State had violated his speedy trial rights. He argued the State had dismissed an earlier complaint without a showing of necessity, and the new complaint, filed on the day after the initial complaint was dismissed, contained five identical charges from the initial complaint. He asserted the speedy trial time limitations began with the filing of the first complaint and the 150-day period had passed without a continuance or the commencement of trial.

On December 2, 2014, the district court entered a pretrial order setting the trial commencement date for December 9, 2014. In an order denying Chapa's motion to dismiss, the court noted that the "August, 15, 2014 dismissal of case No. 14 CR 189 was

2

not due to necessity." The court concluded that "[n]o violation of defendant's 6th Amendment speedy trial protection or 5th Amendment due process protections are presented in this case. [*State v.*] *Ransom*[, 234 Kan. 322, 325, 673 P.2d 1101 (1983)] applies and dismissal per K.S.A. 22-3402 is not warranted."

A jury convicted Chapa of one count of aggravated indecent liberties with a child (Count 1), an off-grid offense; criminal threat (Count 5), a level 9 person felony; and aggravated intimidation of a witness (Count 7), a level 6 person felony. Prior to sentencing, Chapa moved for a downward durational departure with respect to Count 1, asking the district court to depart from the required life sentence with a 25-year mandatory minimum to grid sentencing.

In support of his motion, Chapa testified at sentencing that he got drunk daily when he got off of work in the morning in order to help him sleep, and he felt that it was "pretty possible" that the alcohol contributed to the crimes against his daughter and wife of which he was convicted. He also expressed remorse for his actions. Trial counsel argued that Chapa had no prior criminal convictions and his significant drinking diminished his capacity to appreciate the criminality of his conduct. Counsel contended that these factors, as well as Chapa's age, provided substantial and compelling reasons to depart downward from a life sentence.

The State opposed the motion, arguing that the reasons given were not substantial and compelling. The State also contended that Chapa's intimidation of his victims should be considered, and that he only testified that his drinking may have contributed to his conduct, not that it actually did. Additionally, any remorseful comments Chapa made to police officers were made in a discussion about avoiding jail, not about changing his criminal behavior.

In consideration of the motion, the district court first determined that the reasons Chapa presented were legitimate statutory factors, observing that Chapa's reference to his age appeared to bolster his argument regarding his lack of criminal history. Second, the district court found there was substantial and competent evidence to establish Chapa's lack of prior convictions, acknowledging, however, that it considered somewhat persuasive the State's argument that his lack of prior offenses was the result of Chapa's domination and control of his family. The court also found that Chapa's alcohol consumption substantially impaired his ability to appreciate the criminality of his conduct with respect to Count 1. The court determined that these were substantial and compelling reasons to depart downward to grid sentencing, with a criminal history category of I and a severity level of 3. The grid sentencing for Count 1 produced a range of 61, 59, and 55 months of incarceration for that offense, with a 36-month term of postrelease supervision. The grid range for Count 5 was 5 to 7 months, while the range for Count 7 was 17 to 19 months. The State requested a sentence of 25 years to life and asked the court to switch from considering Count 7 as the primary offense to considering Count 1 as the primary offense. The State also objected to the downward departure.

The district court treated Count 7 as the primary offense and sentenced Chapa to a term of 19 months' imprisonment on Count 7, 7 months' on Count 4, and 61 months' on Count 1, all to run concurrently. The court determined that Chapa was entitled to 15% good time credit on Counts 1 and 7 and 20% good time credit on Count 5. In addition, the court sentenced Chapa to a 3-month term of postrelease supervision for Count 1, a 12-month term for Count 5, and a 24-month term for Count 7.

Because of the district court's downward departure on Count 1 to 61 months, the court should have made the 61-month sentence the primary sentence. We remand to the district court for resentencing consistent with this opinion.

On cross-appeal, Chapa argues the State violated his statutory and state and federal constitutional speedy trial rights when it dismissed the initial six charges against him without a showing of necessity, filed a new complaint against him with the same charges, and then did not try him until 165 days after he was arraigned on the charges in the dismissed complaint. Chapa contends that prior cases do not preclude the inclusion of days between dismissal of the first indictment and filing of the second complaint in the speedy trial calculation, and he asks us whether those days should be included. Chapa also briefly argues that his state and federal constitutional rights were violated, noting that none of the 165 days were chargeable to him, and that "loss of liberty and prejudice" to him established a constitutional violation.

The State cannot dismiss a criminal action and file a new complaint containing identical charges in order to avoid the K.S.A. 22-3402 speedy trial limitations. *State v. Ransom*, 234 Kan. 322, 325, 673 P.2d 1101 (1983). If the dismissal is made without a showing of necessity, the time chargeable to the State in the first action is added to the chargeable time in the second action. 234 Kan. at 325. Statutory chargeable time runs from arraignment to trial commencement. K.S.A. 22-3402.

Chapa has not demonstrated that his statutory speedy trial rights were violated. He asserts in his brief that 165 days chargeable to the State passed between his arraignment on the original complaint and the commencement of trial, which would exceed the 150-day statutory period. His calculation, however, overestimates the time chargeable to the State during the second period, as his total includes the 77 days running from the dismissal of the first complaint on August 14, 2014, to his arraignment on the second complaint on October 31, 2014 (which is the first chargeable day of the second period). Under K.S.A. 22-3402, chargeable time does not start to run until the defendant is arraigned on the charged offenses, and *Ransom* only required the addition of chargeable time from the first period to chargeable time from the second period. 234 Kan. at 325. As such, the two periods, running from Chapa's initial arraignment to the dismissal of the

first complaint and from his second arraignment to the commencement of trial, only included 88 days chargeable to the State.

Chapa argues that *Ransom* is unclear as to whether the time between the dismissal of the first complaint and the arraignment on the charges in the second complaint should be included in the total calculation of time chargeable to the State, but his argument is unpersuasive. The *Ransom* court held that "the time *chargeable* to the State in the first action is to be added to that *accrued* in the second action *only* if the dismissal is made without a showing of necessity; ergo, if the dismissal is made with a showing of necessity, the computation of *statutory* time . . . commences anew upon the filing of the second case and arraignment therein. This is logical, and we so hold." (Emphasis added.) 234 Kan. at 325. Contrary to Chapa's interpretation, *Ransom* clearly discussed the addition of time chargeable to the State under statutory speed trial rules, not all days that fall between the original arraignment and the eventual trial.

Chapa also appears to suggest that *State v. Goss*, 245 Kan. 189, 777 P.2d 781 (1989), provides a basis for including in the State's chargeable time the 77 days between the dismissal of the first complaint and his arraignment on the charges in the second complaint. The *Goss* court discussed the "extraordinary remedy" employed in prior cases of deeming the days between the dismissal of a first complaint and arraignment under a second complaint when the dismissal was "clearly a subterfuge engaged in by the State to avoid dismissal under the speedy trial statute." 245 Kan. at 192. The court stated: "Dismissals and refilings when the statutory period is about to expire are suspect and a showing of necessity must be made." 245 Kan. at 192. At the time the State dismissed the first complaint, only 48 chargeable days had accrued, less than one third of the statutory time. Chapa has not argued that the State actually engaged in a subterfuge to avoid the statutory speedy trial deadline, and no evidence would support such an argument. Accordingly, Chapa has not demonstrated that the State violated his statutory speedy trial rights.

6

In contrast to the chargeable time calculations applicable to the statutory speedy trial analysis, all days running from the first filing of charges to the dismissal of those charges and from the reinstatement of those charges to trial are included in the delay when analyzing a constitutional speedy trial claim. *State v. Gill*, 48 Kan. App. 2d 102, 112-14, 283 P.3d 236 (2012). There are four factors a court must consider, along with any other relevant circumstances, when analyzing an alleged constitutional speedy rights violation, none of which are controlling: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) prejudice to the defendant. 48 Kan. App. 2d at 108 (citing *Barker v. Wingo,* 407 U.S. 514, 530, 533, 92 S. Ct. 2182 [1972]).

The length of the delay under this constitutional analysis includes the 48 days from the first period, the 117 days from the filing of the second complaint until the commencement of trial, and the 2 additional days of trial and jury deliberation until December 11, totaling 167 days. Chapa unquestionably asserted his speedy trial rights when he moved for dismissal prior to trial and reasserted his rights prior to sentencing. Further analysis of Chapa's constitutional argument is inhibited, however, by his failure to procure a transcript for the district court's December hearing on his motion to dismiss. The district court made findings regarding Chapa's speedy trial argument, including its conclusion that the State's dismissal and refiling of the charges was not due to necessity, and, in the absence of a transcript, there is no evidence in the record of the reason for the dismissal and refiling. Chapa does not identify a motivation for the delay, he merely identifies the procedural history of the State's complaint filings as the cause. In the absence of an adequate record or sufficient argument on this factor, we cannot complete our analysis and consider Chapa's constitutional argument waived or abandoned, and we do not need to determine whether the mere fact of Chapa's continued incarceration, without any indication of how much extra time he spent incarcerated as a result of the

7

dismissal and refiling of the charges, sufficiently established prejudice to support a constitutional violation. Chapa's speedy trial rights were not violated.

We now turn to the sentence departure question.

Chapa was tried on a number of counts. The jury convicted him of one count of aggravated indecent liberties with a child. The State has provided us with a transcript of the preliminary hearing but no transcript of the trial. We should look to the trial testimony to determine the facts underlying Chapa's convictions, not what was said at the preliminary hearing which may or may not have been the testimony presented at trial.

In ruling on Chapa's motion for judgment of acquittal at the initial sentencing hearing, the district judge recounted that Chapa's wife testified at trial that she told a detective that she saw Chapa sitting on the toilet with his underwear down and with their 11-year-old daughter on his lap. Chapa "was touching [the child] in the vaginal area and gave [her] a hickey or a bruise on her neck." According to the judge, the child told a detective that Chapa "pulled her on his lap after calling her into the bathroom." She said Chapa held her "real tight, and bit her on the neck. [The child] testified that she tried to get away . . . . [Chapa] held her tight, it was different than a hug and made her uncomfortable." The judge made no reference to the child testifying or telling the detective that her father had touched her in her vaginal area. Chapa was acquitted of two other counts of aggravated indecent liberties with a child.

Chapa was also convicted of a criminal threat apparently directed at one of his other children. We have no record of the facts surrounding this conviction. Chapa was acquitted of two other criminal threat charges.

Finally, Chapa was convicted of aggravated intimidation of a victim. The district judge stated, "The testimony at trial from [the victim was] that people came to ask her

8

about her neck. They were the people who help with children. She told them that her little sister left the mark because her dad had told her to say that."

Chapa moved for a departure sentence on his aggravated indecent liberties with a child conviction. K.S.A. 21-4643(d) permits a departure sentence from the statute's provision for lifetime imprisonment based upon a showing of "substantial and compelling reasons, following a review of mitigating circumstances." The statute sets forth some of the nonexclusive mitigating circumstances that can be the basis for departing from a lifetime imprisonment sentence for first time offenders. These include: (1) "The defendant has no significant history of prior criminal activity," and (5) "The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired."

Chapa, age 60, was not only a first-time offender, but had no criminal history whatsoever.

Chapa testified at his sentencing hearing through an interpreter that he worked a 12-hour shift at the Tyson plant in Garden City. He drank daily to the point of being "very drunk." He testified that "[s]ometimes I drink too much and I lose my memory." The district judge found:

> "I have reviewed the lengthy interview of the defendant which was videotaped in connection with motions to suppress or introduce certain types of evidence, and I do find that the evidence and primarily the defendant's statements in connection with his interview with Detective Brock establish that at the time of the event in May or June of 2011 which led to the defendant's conviction of aggravated indecent liberties for his lewd fondling of his daughter . . . , the defendant's capacity to appreciate his criminality, the criminality of his conduct and [conform] that conduct to the requirements of law was substantially impaired by alcohol abuse."

9

The record does not contain this interview. Bits and pieces are recounted in the court's ruling in the pretrial order on the admissibility of the interview. Without the video recording or a least a transcription of the interview to compare to the judge's finding regarding the effects of alcohol on Chapa's criminal capacity, we presume there was substantial evidence to support this finding by the court.

A departure sentence of 5 years with 3 years' post-release supervision would keep Chapa under the supervision of the department of corrections until he is age 68, at which time the victim would be age 19. In the interim, it was apparent at the sentencing hearing that Chapa's wife and family were making plans to exclude him from their lives.

The extent of the victim impact statement of the daughter who was the victim in Chapa's criminal threat conviction consisted of the following question to the court: "Can the cars and the house be under my mom's name and my sisters?"

Based on Chapa's lack of any criminal history and the effect of his alcohol abuse on his ability to appreciate the criminality of his conduct, the district court found substantial and compelling reasons to depart to concurrent aggravated guideline sentences, with a controlling sentence of 61 months.

We apply an abuse of discretion standard in determining whether, given the totality of the circumstances confronting the district court, its decision to depart from a Jessica's law sentence was arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. We find nothing arbitrary, fanciful, or unreasonable in the sentencing court's decision to depart. If it was based on any error of fact, the State has failed to meet its burden of demonstrating the court's error. Likewise with any error of law. The district court conscientiously applied the statutory framework for considering a departure motion. The State has failed to meet its burden of showing any abuse of

discretion in the district court's decision to depart. We affirm the district court's departure sentence

Affirmed in part and remanded for resentencing.