NOT DESIGNATED FOR PUBLICATION

No. 128,395

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of N.M.

MEMORANDUM OPINION

Appeal from Johnson District Court; JENIFER J. ASHFORD, magistrate judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Richard P. Klein*, of Lenexa, for appellee.

Before ISHERWOOD, P.J., CLINE, J., and COURTNEY D. CRAVER, District Judge, assigned.

PER CURIAM: Every individual accused of a crime enjoys the right to a speedy trial. The State charged N.M., a minor, with two counts of misdemeanor theft, and the district court set the matter for a bench trial at N.M.'s request. Following its receipt of two continuances, the State ultimately opted to dismiss the case without prejudice. It promptly refiled identical charges, and N.M. once again requested a bench trial. Shortly before trial was scheduled to commence, N.M. requested and received dismissal of the case due to a constitutional speedy trial violation. The State now appeals that dismissal.

Following a careful review of the record we find that 287 days lapsed between the initiation of the case and its dismissal. We share the district court's conclusion that such a period of time was arguably untenable and presumptively prejudicial when coupled with missteps by the State that contributed to the delay of what was a simple and

1

straightforward case. Accordingly, the dismissal of N.M.'s case in response to a constitutional speedy trial violation is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from two cases. The original case (original case) was dismissed without prejudice after an essential witness for the State was twice unable to appear. The State refiled its charges against N.M., resulting in the second case (refiled case).

*The Original Case*

On January 10, 2024, the State charged N.M. with two counts of misdemeanor theft. At N.M.'s first appearance, their counsel indicated that N.M. may seek a trial and requested additional time to conduct investigations. The district court offered to set the scheduling conference for February 2024, but counsel declined so it was set for March 2024. The conference was subsequently rescheduled to April, though the record does not provide an explanation for this delay.

At the scheduling conference, N.M.'s counsel again indicated an interest in a trial setting and requested additional time. The parties reconvened in late April 2024, at which time N.M. waived their right to a jury trial, and the district court set the case for a bench trial in June 2024 to accommodate the school schedules of N.M. and other juveniles already waiting on resolution of their cases. In early May 2024, the State requested issuance of a subpoena on a JC Penney employee (Employee) to secure their testimony at trial. The subpoena was to be served in care of JC Penney and was issued the following day.

On June 7, 2024, the State requested a continuance and explained that while JC Penney received the subpoena it failed to pass it along to the Employee, and the

2

Employee would be on vacation through the trial date. N.M. did not object to the continuance, so the district court granted the State's motion and set the trial for July 29, 2024. The State subsequently moved for another continuance, resulting in the trial being reset to August 14, 2024.

On June 26, 2024, a second subpoena was issued for the Employee to appear at the August trial. On August 13, 2024, the State dismissed the original case without prejudice due to the unavailability of a witness.

*The Refiled Case*

The State refiled the complaint against N.M. on August 14, 2024, with all charges and witnesses identical to the original case. On September 11, 2024, at the first appearance in the refiled case, N.M. pleaded not guilty and waived the right to a jury trial. N.M.'s counsel explained their preparedness for trial by stating, "Frankly, we could have it tomorrow." After reviewing N.M.'s rights to a jury trial, the court set a bench trial for October 23, 2024.

Seven days prior to the trial date the State delivered audio discovery to N.M. that was not previously shared. The State asserted that the recording was immediately provided to N.M. once it became aware of the recording's existence. On October 21, 2024, with approximately 40 hours remaining before trial, the State provided N.M. with additional previously undisclosed video discovery. The State explained that it did not intend to use the video but that the recording could potentially offer exculpatory evidence.

The following day N.M. moved to dismiss with prejudice on the grounds that the speedy trial calculation was 113 days—from April 19 to August 13, 2024—plus an additional 29 days from August 14 to September 12. N.M. then counted an additional 42

days between the first appearance on September 12, 2024, and the trial on October 23. In total, N.M. counted 188 days between the waiver of a jury trial on April 19, 2024, and their motion date of October 22, 2024. N.M. argued that coupling these calculations with the State's delays in providing audio and video discovery resulted in "a situation where to effectively prepare for trial would be to violate [N.M.]'s right to a speedy trial." Notably, N.M. misstated the date of the first appearance; the first appearance occurred on September 11, 2024.

On October 23, 2024, the State responded to N.M.'s motion to dismiss and argued it should be denied because (1) N.M. failed to provide the statutory authority permitting juveniles the right to a speedy trial; (2) K.S.A. 22-3402 was silent as to juvenile defendants; (3) the Kansas Juvenile Justice Code did not provide juvenile defendants with a statutory right to a speedy trial; and (4) N.M.'s failure to use any authority to state a claim resulted in unfounded arguments "akin to failing to brief the issue."

The district court conducted a hearing on the parties' filings and opened by stating:

> "I've also reviewed *State of Kansas v. Owens*, 310 Kan. 865[, 451 P.3d 467 (2019)]—that's a Supreme Court decision from 2019—in preparation for arguments. . . . I will note that [N.M.] is alleging 113 days under [the original case], and then an additional 42 days under . . . [the refiled case], which are the same charges . . . , and arguing that both should be counted for a total of 188 days."

Following oral arguments, the court stated, "*State v. Owens* . . . is directly on point in this case." *Owens* relies on *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which identifies four factors for courts to consider when assessing whether a violation of an individual's constitutional right to a speedy trial occurred: (1) length of the delay; (2) the reasons for the delay; (3) the assertion of the right to a speedy trial; and (4) prejudice to the defendant.

4

*The district court's findings in the refiled case, using the* Barker *factors*

In an exceptionally well-crafted decision, the district court analyzed the facts under each *Barker* factor. It first determined that the length of the delay was "at least at 188 days past" N.M.'s initial request for a bench trial. It added that "the complexity of [a] case," is a subpart, and noted that N.M.'s misdemeanor theft case was not overly complex "in any way, shape, or form."

Second, while the district court found that the unavailability of a witness is an "appropriate reason" to delay a trial, it also determined that

> "[N.M.]'s right to speedy trial, I think his constitutional right to a speedy trial must outweigh witnesses that are simply not available for trial. We set these cases at least 30 days out in order to allow the State adequate time to notify their witnesses and make sure their schedules fit."

The judge also addressed the State's late disclosure of discovery and acknowledged that the State "was [not] trying to hide the ball, but [it] is deemed to have whatever evidence the detectives have." It noted that "[the State is] expected to be diligent" and the fact that another delayed disclosure occurred merely days before trial, on the third trial setting, was "concerning." It also confirmed that an additional continuance in August 2024 would not have been granted as courts "typically only give each side one continuance, expecting them to be ready to go at that second setting."

Regarding the third *Barker* factor, the district court found that N.M. asserted the right to a speedy trial when, on April 19, 2024, they waived a jury trial and requested a bench trial.

Lastly, as to prejudice, the district court explained that usually the concept of prejudice contemplates a person's ability to present evidence without impediments. It

recognized that delays make it more difficult from the perspective of witness availability and the freshness of their memories. The judge acknowledged that the delays also caused N.M. anxiety but found that point to be less than compelling under the circumstances. The district court concluded that under *Owens*, it was required to dismiss the refiled case with prejudice.

The State now brings its appeal before us for a determination of (1) whether the district court erred in calculating the length of delay as 188 days; (2) if yes, is the length of delay presumptively prejudicial; and (3) did the delay constitute a violation of the right to a speedy trial. We have included additional facts as necessary to resolve the issues before us.

LEGAL ANALYSIS

The State contends that N.M.'s right to a speedy trial was not violated. It disputes only the calculation for the length of delay, however, and concedes that the district court's remaining findings are generally supported by the record. The State makes three arguments. First, it asserts that the duration of the delay is 71 days, as the speedy trial clock reset when the State refiled the case out of necessity. It next argues that, even if refiling tolled the speedy trial clock, the correct calculation is 188 days. Lastly, it maintains that the length of the delay was not presumptively prejudicial regardless of the duration.

N.M. agrees that the district court erred in its calculation for the length of delay, and contends that the correct duration is actually 287 days, i.e., from the date the case was filed on January 10, 2024, until it was dismissed on October 23, 2024. Finally, N.M. argues that negligence, not necessity, required the State to refile the case and N.M. suffered prejudice as a result.

In reviewing a district court's determination concerning a party's constitutional right to a speedy trial, this court applies a bifurcated standard: The underlying factual findings are examined for substantial competent evidence, and the legal conclusions drawn from those facts are subject to de novo review. *State v. Owens*, 310 Kan. 865, 868, 451 P.3d 467 (2019).

I. *Procedural missteps resulted in a 287-day delay.*

N.M. argues that their right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights was violated because their bench trial would not occur until at least 188 days after the complaint was filed. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." This amendment applies in Kansas through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Owens*, 310 Kan. at 869 (citing *Klopfer v. North Carolina*, 386 U.S. 213, 222-23, 87 S. Ct. 988, 18 L. Ed. 2d 1 [1967]). Under section 10 of the Kansas Constitution Bill of Rights, N.M. has the right "[i]n all prosecutions" to "a speedy public trial by an impartial jury." The guarantee of a speedy trial under these provisions applies equally to juvenile and adult defendants. *State v. Robinson*, 56 Kan. App. 2d 567, 567, 434 P.3d 232 (2018).

The United States Supreme Court has found that the constitutional right to a speedy trial is not governed by an inflexible standard. See *Barker*, 407 U.S. at 529 (rejecting both the specified time approach and the demand-waiver doctrine in favor of a balancing test). Instead, courts balance four nonexclusive factors: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of their right to a speedy trial; and (4) prejudice to the defendant. *Owens*, 310 Kan. at 869 (citing *Barker*, 407 U.S. at 530).

This approach weighs the conduct of the prosecution and the accused, "'suggest[ing] an *ad hoc* basis in which various factors are to be taken into account.'" *Owens*, 310 Kan. at 869 (citing *State v. Otero*, 210 Kan. 530, 532, 502 P.2d 763 [1972]). Under the totality of the circumstances, no single factor is dispositive; all relevant considerations must be balanced to determine whether a violation has occurred. *Owens*, 310 Kan. at 869.

Before the *Barker* factors can be used to examine the facts, it is imperative to resolve two foundational issues. We must accurately assess the duration of the delay but, to do that, we must first determine whether the speedy trial clock was reset by the witness' unavailability. That is, we must settle the preliminary matter of whether the Employee's scheduling conflict qualified as a necessity that reset the speedy trial clock when the State refiled its complaint against N.M.

A. *Refiling the complaint did not arise from necessity.*

While witness unavailability can justify delay, Kansas law requires that dismissal and refiling be based on necessity, not prosecutorial missteps or scheduling conflicts. As this court has explained:

> "[W]hen the State dismisses a charge and files another one, the constitutional speedy trial clock will start anew in the second case if the State dismissed the first case because of necessity or the charge in the second case is not identical to the charge that was previously dismissed. If, however, the first case was not dismissed because of necessity *and* the charge in the second case is identical to the charge previously dismissed, then the dismissal of the first case will be construed as merely tolling the constitutional speedy trial clock." *State v. Gill*, 48 Kan. App. 2d 102, 113-14, 283 P.3d 236 (2012).

The necessity standard is construed narrowly. Whether the State has satisfied this threshold depends on the extent to which it exercised control over the circumstances

prompting dismissal. See *State v. Ransom*, 234 Kan. 322, 327-28, 673 P.2d 1101 (1983) (finding a necessity where the State could not control significant professional events of witnesses); see also *State v. Contreras-Avila*, No. 125,485, 2024 WL 4002824, at *7 (Kan. App. 2024) (unpublished opinion) (finding no necessity where the State could control staff substitutions amid health concerns). Although this is a constitutional speedy trial claim, Kansas courts apply the same necessity standard used in statutory speedy trial cases when determining whether the delay should be attributed to the State. See *Contreras-Avila*, 2024 WL 4002824, at *6 (*citing State v. Gill*, 48 Kan. App. 2d 102, 113, 283 P.3d 236 (2012).

In *Ransom*, one witness absconded while two other principal witnesses had "serious conflicts" with the trial date. 234 Kan. at 325-26. Both principal witnesses were physicians whose testimony was "necessary to lay the foundation for the critical expert testimony." 234 Kan. at 326. However, one physician was scheduled to take state medical board exams during the trial dates while the other had a "long-standing commitment to attend a professional meeting" out-of-state. 234 Kan. at 326. The *Ransom* court explained that a medical board exam is a "significant event . . . which [the witness] can[not] control or alter." 234 Kan. at 326. In finding that the State made a showing of necessity, the *Ransom* court clarified: "Witnesses do not always appear, even though they are ordered to do so. Some are stricken on the way to the courthouse; others are hospitalized and undergo surgery. Such problems cannot be anticipated. Other conflicts, however, can." 234 Kan. at 327.

Unlike in *Ransom*, the Employee's vacation in N.M.'s case was not an uncontrollable, significant event affecting their career. Nor does the record reflect that JC Penney prohibited the Employee from testifying due to their new position within the company or that the Employee would have faced professional consequences for doing so. Indeed, one of the alleged thefts occurred at JC Penney, so it is reasonable to think that JC Penney was invested in the Employee's testimony.

In *Contreras-Avila*, 2024 WL 4002824, at *7, this court upheld the district court's conclusion that the State's dismissal was not compelled by necessity, as the prosecutor's COVID-19-related "personal health concerns" were "within the prosector's control." We explained that while concern was understandable, the State has a responsibility to be prepared for trial. Therefore, it should have provided a substitute attorney and the "adequate staffing of the prosecutor's office is entirely within the State's control and is not analogous to uncontrollable issues such as missing witnesses or changing caselaw." 2024 WL 4002824, at *7.

The State's conduct directly contributed to the likelihood that the Employee would be unavailable to testify. As the court explained, cases are set with at least a 30-day window for the State to notify witnesses and resolve scheduling conflicts. The State had 52 days to subpoena and prepare the Employee—from the initial scheduling conference in the original case on April 19, 2024, to the bench trial date of June 10, 2024.

While the State had a 52-day window to provide notice, several procedural missteps made that timeline challenging. First, the State waited for 17 days after the scheduling conference in the original case before issuing a subpoena for the Employee, only mailing it May 6, 2024. This decision left 35 days to prepare. Although 35 days would ordinarily be more than sufficient under the district court's 30-day standard, additional errors by the State ultimately resulted in its dismissal of N.M.'s case.

The State did not send the subpoena directly to the Employee. Instead, it was mailed in the care of JC Penney, at the location where the Employee had previously worked. Given that the alleged theft occurred on December 29, 2023, more than four months before the subpoena was issued, the State should have reasonably expected that the Employee might no longer be working at the same JC Penney location, or even with the company at all. Furthermore, the ease of obtaining the Employee's proper address was illustrated with the State's second subpoena to them.

Additionally, despite using indirect service, the State failed to follow up and confirm whether the Employee received the subpoena until only a few days remained before the commencement of trial. Only then did the State learn that the Employee would be on vacation during the trial and, also, was no longer employed at that JC Penney location. An assessment of the factors surrounding the Employee's unavailability reflects that it was reasonably foreseeable, not uncontrollable. We find that, as in *Contreras-Avila*, the decisions leading to the first continuance and dismissal were well within the State's control.

Moreover, the State's conduct indicates a lack of due diligence. To reset the speedy trial clock under the unavailable essential witness exception, the State must demonstrate that it did its due diligence to obtain the sought after testimony. *United States v. Burrell*, 634 F.3d 284, 290-91 (5th Cir. 2011) (explaining that the government must show it made reasonable efforts to secure a witness to reap the benefit of the unavailable witness exception); see also *State v. Williamson*, 210 Kan. 501, 506, 502 P.2d 777 (1972) (an unavailable witness justifies a continuance if the party seeking a continuance "show[s] due diligence to procure the witness' testimony; he does not warrant a continuance merely upon an assertion he relied upon the promises of witnesses that they would be present and testify"). For the reasons previously mentioned, the State has failed to establish that it did its due diligence to procure the Employee's testimony.

Lastly, the State does not pinpoint the Employee as the witness who was unavailable for the trial on August 13, 2024. The record indicates that the State had a witness who would be unavailable on that date but does not clearly identify that witness. Without more information, we cannot determine whether the State's effort to secure the unavailable witness would have justified a continuance. Put differently, without knowing which witness was unavailable on August 13, 2024, and the actions the State took to ensure that individual's attendance at trial, we cannot determine whether the unspecified

11

witness' unavailability qualified as a necessity that reset the constitutional speedy trial clock.

We agree with the district court's decision that the facts here do not create the type of necessity contemplated when resetting the constitutional speedy trial clock. While the district court did not make an express finding that the State failed to make a showing of necessity, the record and its findings reflect that it did so implicitly. Unlike in *Gill*—where the State filed misdemeanor charges, dismissed, then filed felony theft charges—the State filed identical charges against N.M. in the original case and in the refiled case. See 48 Kan. App. 2d at 105. Accordingly, refiling the case did not reset the constitutional speedy trial clock.

B. *The length of delay is 287 days.*

Although the district court calculated the length of delay at 188 days, in actuality the delay totaled 287 days. When evaluating a constitutional speedy trial claim, courts generally measure the "length of delay" from the initiation of criminal prosecution to the trial. *State v. Ford*, 316 Kan. 558, 561, 519 P.3d 456 (2022). Except as otherwise authorized by law, a criminal prosecution begins with the filing of a complaint. K.S.A. 22-2301(1). The initiation of prosecution may otherwise be "'an indictment, an information, or an arrest, whichever first occurs.'" *Ford*, 316 Kan. at 561. Prosecution of N.M. began when the complaint was filed on January 10, 2024. The number of days between January 10, 2024, and October 23, 2024, amounts to 287 days.

C. *The delay is presumptively prejudicial.*

A 287-day delay is presumptively prejudicial in a case involving two counts of misdemeanor theft where each offense was valued at less than $1,500 and very few witnesses were required for the two-hour bench trial. The length of delay serves as a

"'triggering mechanism'" for the remaining three *Barker* factors. *Gill*, 48 Kan. App. 2d at 108. "'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" 48 Kan. App. 2d at 108 (citing *Barker*, 407 U.S. at 530). Rather than rely on a strict timeline, Kansas courts determine whether the length of delay is presumptively prejudicial on a case-by-case basis. *Gill*, 48 Kan. App. 2d at 108 (citing *State v. Weaver*, 276 Kan. 504, 509, 78 P.3d 397 [2003]). Complexity is the determinative factor distinguishing a presumptively prejudicial delay from one that is not. *Owens*, 310 Kan. at 874. Accordingly, a "tolerable delay for an ordinary crime is less than for a complex one." *Weaver*, 276 Kan. at 511 (citing *Barker*, 407 U.S. at 531).

The court in *Owens* held that a 19-month delay was presumptively prejudicial where the defendant was charged with "classic 'street crimes' of aggravated robbery, criminal use of a weapon, and criminal deprivation of property." 310 Kan. at 873. Additionally, there were few witnesses and no complex evidence to consider. A 14-month delay in *Weaver* was likewise deemed presumptively prejudicial, as it only involved a single count of possession of cocaine with intent to sell and involved a very straight forward set of facts—police found crack cocaine on Weaver, packaged in individual units and $265 cash, including twelve $20 bills. 276 Kan. at 510. Conversely, a "23-month delay between arrest and trial was not prejudicial in case in which multiple inmates attacked prison guards; at least 30 inmates were considered viable suspects in the attacks; and indictments were returned against 12 inmates." *Owens*, 310 Kan. at 874 (citing *State v. Mathenia*, 262 Kan. 890, 894-95, 942 P.3d 624 [1997]).

The State concedes that the misdemeanor charges against N.M. are not complex. Even so, it argues the delay was reasonable because accomplices were implicated and there were difficulties in issuing subpoenas to certain lay witnesses. The State contends the delay cannot be properly characterized as presumptively prejudicial as our Supreme Court has found longer delays tolerable, relying on *State v. Goss*, 245 Kan. 189, 193, 777

13

P.2d 781 (1989) (finding the delay of "a little over a year between arrest and trial" was not presumptively prejudicial). These arguments are not persuasive.

First, a portion of the challenges regarding witness unavailability are properly attributable to the State, despite its attempt to shift responsibility to JC Penney. Second, while the State cites alleged accomplices as complicating factors, those two individuals were tried separately and settled their cases well in advance of N.M.'s October trial date. Indeed, one case was transferred to another county. Moreover, the State routinely prosecutes more than one case at a time. Finally, although there was no bad faith, the State submitted discovery to N.M. less than 48 hours before the October 23, 2024, trial date, which arguably results in additional delay.

This is not a complex case where the State subpoenaed a multitude of witnesses, was burdened with the complexities of forensic evidence or an unmanageable volume of evidence. This case involved a two-hour bench trial to resolve two misdemeanor counts of theft. Accordingly, we conclude the delay is presumptively prejudicial under the circumstances and warrants further analysis under the remaining *Barker* factors.

II. *The remaining Barker factors ultimately weigh in N.M.'s favor.*

N.M. maintains that their constitutional right to a speedy trial was violated by the delay. When a defendant makes such a claim, we rely on the *Barker* factors to assist us with resolution of the claim. 407 U.S. at 530. This balancing test weighs the conduct of both parties and any other relevant facts. *Otero*, 210 Kan. at 532. The length of the delay is discussed above and weighs against the State.

14

A. *The reason for the delay*

The State asserts that the delay was a product of the district court's calendar and, as we have noted throughout, challenges posed by an unavailable witness. It takes the position that the court's schedule is a factor that weighs against N.M., while the issue of its unavailable witness is an "'appropriate reason'" to delay.

While the first and second *Barker* factors are closely related, they should not be conflated. 407 U.S. at 530-31. As that Court explained, different weights are assigned to different reasons for delay:

> "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. at 531.

Issues involving the court's calendar are properly attributed to the State, not N.M., though it is not weighed heavily. See 407 U.S. at 531. Furthermore, at the April 2024 hearing the court specifically set the trial for June to minimize school disruptions. The court's sua sponte consideration of N.M.'s academic needs counterbalances that minimal weight assigned to the State as a product of issues stemming from the district court's calendar.

Next, while a missing witness may justify delay, the State's errors contributed to the Employee's unavailability. The *Barker* Court found that a missing witness may justify *appropriate* delay, not all delay. 407 U.S. at 531. Not only did the State make procedural missteps in its subpoena of the Employee, but it also received two continuances due to an unavailable witness. Thus, it would be unjust to conclude that its missing witness wholly

15

justifies the delay, particularly when the record is vague as to the July continuance. The missing witness weighs against the State.

The submission of late discovery also weighs against the State. It had two instances of late discovery, despite the case being twice set for trial for a considerable period of time, before the State provided the discovery to N.M. While it may not rise to the level of bad faith, the State's conduct certainly falls within the scope of what could be considered negligence.

Fourth is the matter of the March rescheduling, which the record does not explain. The court initially set a scheduling conference for March 2024, though the record indicates it occurred on April 2, 2024. As it is the State's duty to bring a defendant to trial, this rescheduling ambiguity is properly attributable to the State, though not significantly so. See *State v. Rivera*, 277 Kan. 109, 116-17, 83 P.3d 169 (2004).

Still, N.M. twice delayed the proceedings. At the first appearance on February 9, 2024, N.M. requested more time to conduct investigations and again requested additional time at the status conference on April 2, 2024. While these acts weigh against N.M., the request for a bench trial rather than a jury trial weighs in N.M.'s favor.

While the individual components within this factor are minimal, the reason for delay ultimately weighs against the State when the causes are considered cumulatively.

B. *The assertion of the right*

The State contends that (1) N.M. did not assert the right to a speedy trial until the motion to dismiss was filed on October 22, 2024, and (2) N.M.'s failure to object to the State's motion to continue in June 2024 amounted to acquiescence. N.M. counters that (1) the right was asserted at the scheduling conference on April 19, 2024, and (2) the

constitutional right to a speedy trial cannot be acquiesced with inaction, such as failing to object to a continuance. We agree with the district court's finding that N.M. asserted the right in April 2024, when a bench trial was requested.

"The State has the duty of bringing the defendant to trial." *Rivera*, 277 Kan. at 117. Nonetheless, a defendant failing to assert the right to a speedy trial makes it difficult to establish denial of that right. 277 Kan. at 117.

This court found the defendant in *State v. Burgess*, No. 109,029, 2014 WL 1362785, at *1 (Kan. App. 2014) (unpublished opinion) was passive through "several continuances, arraignment, and another continuance" in the first case then, after the State dismissed and refiled, remained passive through "arraignment, several continuances and modification of bond supervision" in the second case. This court found Burgess did not assert the right to a speedy trial until trial was to begin. 2014 WL 1362785, at *1, 5.

The parties here agree that N.M. asserted the right to a speedy trial; where they disagree is when such assertion occurred. N.M. asserted the right in April 2024, when a bench trial was requested. From the outset, N.M. demonstrated an inclination to move the proceedings along by requesting additional time at the first appearance to conduct investigations and again at the status conference on April 2, 2024, to prepare for trial. These requests reflect a strategic approach to trial readiness that signaled a clear willingness to proceed, particularly when coupled with N.M.'s subsequent request for a bench trial.

Moreover, unlike the defendant in *Burgess*, N.M. was not passive through numerous continuances and additional proceedings. N.M. faced only two continuances before the refiling and clearly requested a bench trial in September 2024 after the case was refiled. During the September proceeding, N.M.'s counsel expressed a willingness to quickly resolve the case, stating, "We're asking for another trial setting. Frankly, we

could have it tomorrow." It was the district court that had to move it to a later date due to its full calendar.

N.M.'s counsel's articulation of their preparedness and the request for a bench trial in the original case was an assertion of the right to a speedy trial. Although N.M. did not object to the State's first continuance, this by itself does not amount to acquiescence because, as the district court explained, each side typically receives one continuance. Therefore, this factor weighs against the State.

C. *Prejudice to N.M.*

The State contends that N.M. was not prejudiced as they were not incarcerated, did not affirmatively argue an anxiety defense, and their defense was not impaired by delay. It asserts that each of these points weighs against N.M., with the lack of impairment bearing considerable impact.

In opposition, N.M. highlights that the court considered the alleged accomplices' outcomes, N.M.'s anxiety, and the disadvantage caused by the State's delayed discovery. Rather than arguing that each point is given an individual weight, N.M. contends that the factor as a whole weighs against the State.

In an analysis of the prejudice factor, courts consider three interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; see *Owens*, 310 Kan. at 880. While neither court in *Owens* nor *Barker* weighs each interest individually, the Court in *Barker* explained that affecting a defendant's ability to prepare their case "skews the fairness of the entire system," and is the most serious. 407 U.S. at 532.

N.M. was not incarcerated, leaving us to examine only the second and third interests. The *Barker* Court explained that a defendant who is not incarcerated is nevertheless "still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." 407 U.S. at 533. Such emotional considerations may also be experienced to a greater degree by juveniles than adults, as there is a "'fundamental difference[] between juvenile and adult minds.'" See *Miller v. Alabama*, 567 U.S. 460, 471-72, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (explaining that juveniles are "constitutionally different from adults for purposes of sentencing" due to their "'lack of maturity and an underdeveloped sense of responsibility,'" which leaves them "'more vulnerable . . . to negative influences and outside pressures'").

N.M. associated their anxiety with the fact that alleged accomplices were prosecuted and on probation while N.M. continued to await trial. While the court found this comparison to be a unique—but still weak—argument, the fact that N.M. is a juvenile is relevant and actually strengthens the argument. Watching alleged accomplices get tried and released from the court's jurisdiction while sitting by as their own prosecution is delayed may send misleading messages to peers, teachers, and community members, thereby raising the very suspicion and hostility toward N.M. that the speedy trial right was designed to prevent. Moreover, at the October 2024 proceeding, N.M. explained that rescheduling the trial multiple times caused anxiety and the State's late disclosure of discovery exacerbated that anxiety. While N.M.'s anxiety defense may not carry significant impact, it remains a valid factor worthy of consideration. See *Barker*, 407 U.S. at 532-33 (stating minimizing anxiety is a goal of the right to a speedy trial).

With respect to the third interest, as in most cases, the reliability of witness recollection tends to diminish with the passage of time. Still, a forgetful State's witness may be in N.M.'s favor.

19

Lastly, because the State delayed submission of discovery, N.M. was unable to move forward with the trial as expected on October 23, 2024. Specifically, the State acknowledged that the video was potentially exculpatory evidence that it was obligated to provide to N.M. See *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (establishing that prosecutors must disclose exculpatory evidence to the defense). Another delay would be necessary to allow N.M. time to review such discovery.

For the above reasons, the prejudice factor weighs against the State.

CONCLUSION

A presumption of prejudice arose from the length of the delay, which was excessive given the simplicity of the case. The length of delay weighs in N.M.'s favor and its presumption of prejudice allows consideration of the remaining *Barker* factors. The reason for delay also weighs in N.M.'s favor, though only slightly. Next, N.M. asserted the right to a speedy trial while proceedings in the original case were underway, in April 2024. Finally, the prejudice factor weighs against the State due to its late submission of discovery. Given the balance of the *Barker* factors, the district court correctly found that N.M.'s rights to a speedy trial were violated.

Affirmed.